**Russell Leigh DOTY, Jr., on behalf of himself and all other voters and precinct committeemen and committeewomen similarly situated in and for the Second Congressional District, State of Montana, Petitioner,**

v.

**MONTANA STATE DEMOCRATIC CENTRAL COMMITTEE, Respondent.**

Civ. No. 1754.

United States District Court, D. Montana, Helena Division.

July 26, 1971.

Judgment Oct. 28, 1971.

James H. Goetz, Bozeman, Mont., for petitioner.

Leif Erickson, Helena, Mont., for respondent.

### OPINION AND ORDER

RUSSELL E. SMITH, Chief Judge.

Doty, a citizen of Montana, a qualified voter, a Democrat, and a precinct com-

mitteeman in Cascade County, seeks by this action to require the Democratic Party in Montana [1] to abide by the one-man, one-vote principle in certain phases of its activities.

The structure of the Democratic Party in Montana is established by law [2] and the rules of the Party. The law provides for city, county, congressional district, and state central committees. It requires that one county committeeman and one county committeewoman be chosen from each precinct in the county.[3] These men and women comprise the county central committee.[4] Those of them who reside in a city comprise a city central committee.[5] Each county central committee selects one state committeeman and one state committeewoman [6] who, together with certain *ex officio* members provided for by the Party rules,[7] constitute the state central committee. The county central committee elects a congressional district committee.[8]

The county central committee fills vacancies in the Party's slate of candidates occurring between the dates of the primary and the general election.[9] In multi-county districts vacancies are filled by a committee composed of three members from each of the affected counties.[10] In the case of congressional candidates vacancies are filled by a convention composed of the delegates selected by a formula as follows:

" * * * Each county shall be entitled to elect one (1) delegate and one (1) alternate delegate for each One Thousand (1,000) votes cast, or major fraction thereof, for the Democratic candidate for governor in the preceding general election, provided there shall be a minimum of one (1) delegate and one (1) alternate delegate from each county." [11]

Prior to the codification of the election laws in 1969 [12] vacancies at the state level were filled by a state central committee. However, in 1969 R.C.M. 1947, § 23–929(3), was repealed, and now neither the law nor the Party rules, which have not been amended since the 1969 codification, provide a method for filling vacancies at the state level.

The Democratic Party holds several conventions, only one of which is important here, and that is the state convention which elects delegates to the national presidential nominating convention and thus participates in the selection of the President of the United States. The county central committee elects delegates to the state convention. The number of delegates is fixed by a formula adopted by a Party rule which is identical with that fixed for electing delegates to the congressional committee.

The territorial unit for the conduct of elections in Montana is the precinct.[13] The county commissioners establish the number and, subject to some statutory commands, the boundaries of the precincts.[14] The statutory mandate to equalize the number of electors in the several precincts has not been taken seriously over the years, and the result is that there are gross population vari-

---

1. This action initially named the Secretary of State and the Governor of Montana, and the Montana State Republican Central Committee as parties defendant. The case, however, has been dismissed as to all parties except the Montana State Democratic Central Committee.

2. Ch. 368, §§ 72–83 incl., Laws of Mont. 1969, at 1023–1029.

3. *Id.* § 72 at 1023.

4. *Id.* § 73(2) at 1023.

5. *Id.* § 73(3) at 1023.

6. *Id.* § 74(1) (b) at 1024.

7. Rule 2b.

8. Ch. 368, §§ 74(1) (b), Laws of Mont. 1969, at 1024.

9. *Id.* § 75 at 1024.

10. *Id.* § 82(3) (a) at 1028.

11. *Id.* § 81(1) (h) at 1027, and Rule 18 of the Party rules.

12. *Supra* at Note 2.

13. Ch. 368, § 18, Laws of Mont. 1969, 997–998.

14. *Id.* § 18 at 997–998.

ances in the precincts in 55 of Montana's 56 counties. By way of example, the largest precinct in Missoula County has 29.6 times as many registered voters in it as the smallest. At the extreme, the ratio is 68.8 to 1.[15]

The formula fixing the number of delegates which a county may send to the state convention which selects the delegates to the national convention results in a malapportioned state convention. On the basis of the 1970 Census and the present rules, at the next state convention the maximum variance ratio would be $\frac{7.94}{1}$.[16]

It is clear that the nomination of candidates to fill vacancies by the county central committee is, because of the malapportionment of the county central committee, not in compliance with the one-man, one-vote principle, and that this malapportionment runs through and is compounded at the higher levels of party action where candidates for congressional and state offices are selected and where delegates are chosen to the national presidential nominating convention.[17]

▇▇▇▇ The two primary legal problems presented by this case, i. e., whether the case presents a justiciable controversy and whether the Fourteenth Amendment applies to major political parties, were answered in the affirmative in a case presenting almost identical problems by Judge Goodwin of the District Court of Oregon sitting in the Western District of Washington. Maxey v. Washington State Democratic Committee, 319 F.Supp. 673 (W.D. Wash.1970). For the reasons stated by Judge Goodwin I hold, first, that this case presents a judicable controversy and, second, that in the processes by which the Party nominates candidates for public office and selects delegates to the presidential nominating convention, it is governed by the Fourteenth Amendment.

The Court proposes to enter the following order:

It is therefore ordered that the Democratic Party of the State of Montana be, and it is hereby, enjoined from nominating candidates to fill vacancies for elective offices or electing delegates who have any part in the selection of delegates to the national presidential nominating convention by any method which contravenes the one-man, one-vote principle. Until such time as the Party shall devise a method complying with the one-man, one-vote rule, the selection of the persons above named shall be made as follows:

All voting, to the extent that voting is governed by this order, shall be weight-

---

15. These ratios are based on registered voters and do not necessarily reflect an accurate picture of the ratio of Democrats. There is no requirement in Montana that voters register according to the party of their choice, and because considerations of one kind and another lead people to vote the primary ballot of the party other than the one to which they normally belong, and because in the general election there is widespread vote-splitting as revealed by the results of the general election, it is difficult in Montana to know who are Democrats or how many of them live in a particular place. The malapportionment is so gross, however, that there can be no doubt, and I so find, that, considering Democrats alone, there exists a gross malapportionment.

16. This ratio is determined by taking the number of votes cast for the Democratic candidates for governor in 1968 in Beaverhead County and dividing it by the same vote in Petroleum County. Expressed as a fraction, it is $\frac{1.373}{173}$. Again the vote for the Democratic candidate for governor may not be an absolute index of the number of Democrats, but the malapportionment again is so gross as to warrant a finding, which I make, that the convention is malapportioned if only Democrats are considered.

17. Nothing in this opinion or proposed order relates to the party or its organization in the conduct of its affairs except as to nominations of party candidates for public offices and the ultimate selection of delegates to the national presidential nominating convention. See Dahl v. Republican State Committee, 319 F.Supp. 682 (W.D.Wash.1970).

ed in such a way as to reflect the number of Democrats represented by the person casting the vote. For the purposes of this order a Democrat is defined as a person voting for a Democratic candidate for precinct committeeman or committeewoman in the last election at which committeemen and committeewomen were elected. Since each voter may vote for both a precinct committeeman and a precinct committeewoman, each precinct committeeman and each precinct committeewoman shall be deemed to represent a number of people equal to one-half of the total number of all (not just the votes for the successful candidates) votes cast for precinct committeemen and committeewomen in his or her precinct in such election. By way of example, if there are 50 votes for all precinct committeemen and committeewomen running in Y Precinct in X County, then at a county central committee meeting in X County voting to elect a delegate to the state convention the committeeman from Y Precinct would cast a vote weighted to one-half of 50, or 25.

The whole delegation of a county at a Party meeting above the county level, such as a state committee meeting, a meeting of the congressional committee, or a meeting of the state convention, shall be deemed to represent the number of people equal to one-half of the total number of votes cast in the county for precinct committeemen and precinct committeewomen, and each delegate shall be deemed to represent that fraction of the Democrats in the county equal to the ratio between such delegates and the whole number of the delegates from the county voting on the same issue. By way of example, if there are 600 votes cast for all precinct committeemen and committeewomen running in X County, and if there are five delegates to the state convention from X County, then each delegate would cast a vote weighted to one-half of one-fifth of 600, or 60.

In all voting governed by this order the Party is enjoined from giving to any ex officio delegate of any kind the right to vote in any elections to fill vacancies in the slate of the Party's candidates for election, or to vote for a delegate to the national presidential nominating convention.

The word "delegate" as used herein shall include the words "alternate delegate."

The parties shall have 20 days within which to file exceptions to these findings and conclusions and proposed order. If the parties deem the order to be unworkable, ambiguous, or incomplete, the parties are invited to incorporate any suggestions which they may have in their exceptions.

## JUDGMENT

On July 26, 1971, the Court filed an opinion and order in this case and granted the parties time within which to file exceptions. At the request of the defendant the time was exended. The defendant takes no exception to the Court's findings and that part of the order directing that the defendant abide in certain of its activities by the one-man, one-vote rule.

The defendant has since the date of the Court's opinion adopted rules which appear to the Court to satisfactorily accomplish a one-man, one-vote result and since the basic responsibility is that of the defendant and the Court's proposed plan was interim in character, that portion of the proposed order outlining a plan is withdrawn.

It is therefore ordered, adjudged, and decreed that the Democratic Party of the State of Montana be, and it is hereby, enjoined from nominating candidates to fill vacancies for elective offices or electing delegates who have any part in the selection of delegates to the national presidential nominating convention by any method which contravenes the one-man, one-vote principle.