RUSSELL LEIGH DOTY, JR., PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 7928–72. Filed August 5, 1974.

Russell Leigh Doty, Jr., pro se.
*R. Burns Mossman,* for the respondent.

SCOTT, *Judge:* Respondent determined a deficiency in petitioner's Federal income tax for the calendar year 1970 in the amount of $209.36.

The issue for decision is whether litigation costs, including an attorney's fee paid by petitioner incident to a suit successfully challenging the constitutionality of the procedures of the Montana State Democratic Central Committee for selection of delegates to the State and National Democratic Conventions which nominate party candidates, are deductible as a charitable contribution under section 170(c)(1), I.R.C. 1954.[1]

### FINDINGS OF FACT

Some of the facts have been stipulated and are found accordingly.

Petitioner was a legal resident of Minneapolis, Minn., at the time of the filing of his petition in this case. He and his wife, Janet Rae Doty, filed a joint Federal income tax return for the calendar year 1970. From January 1, 1970, through August 1970, petitioner was a citizen and qualified voter of Missoula, Mont., where he taught social studies at Meadow Hill Junior High School, and was a part-time student at the University of Montana, pursuing a master's degree in political science.

In Montana each of the major political parties selects its candidates for State and Federal offices in a convention composed of delegates selected by counties. During the 1968 Presidential campaign, petitioner formed an opinion that the provision for a minimum of one delegate from each county in Montana to the Montana State Convention of the Democratic Party, which convention nominates certain party candidates and also elects the Montana delegates to the National Democratic Nominating Convention, resulted in greater representation in votes to the sparsely populated counties than to the more populous counties. He

---

[1] All section references are to the Internal Revenue Code of 1954.

stated this objection to the system to some of the Democratic committeemen, but agreed to abide by the rules as then existing until after selection of the 1968 Democratic Presidential candidate, with the understanding that the Montana Democratic Committee would thereafter consider changing its rules. The rules were not subsequently changed, and in 1969, when the Governor of Montana called a special election to be held on June 24 to fill a vacant congressional seat, petitioner informed officials of the Montana Democratic Party that he believed the rules for selection of delegates to the Democratic State Convention were unconstitutional in their present form, and that he intended to challenge their legality.

Petitioner received no response from the officials of the Democratic Party to whom he made his complaint. He then published an article in a Montana newspaper explaining his view and spoke about his view with other persons, including the administrative assistant to the Governor of Montana, the Montana legislative counsel executive director, the legislative counsel president, a Democratic national committeeman, a law school professor, an adviser to the Montana Republican Central Committee, a Montana county attorney, and two State senators. Petitioner wrote a letter to the Montana Democratic Party Chairman, the text of which petitioner released to the United Press, Associated Press, and Inter-Mountain News.

Despite petitioner's efforts, the officials of the Montana Democratic Party left in effect the rules which petitioner believed were substantially unconstitutional for use in the upcoming special election.

On April 30, 1969, petitioner instituted in the United States District Court for the District of Montana, on behalf of himself "and all other Voters and Precinct Committeemen and Committeewomen, similarly situated in and for the Second Congressional District, State of Montana," an action against the secretary of state of Montana, the Governor of Montana, the Montana State Democratic Central Committee, and the Montana State Republican Central Committee, which as later amended sought a declaratory judgment that the precincts in Montana were substantially malapportioned and that the rules for the selection of Montana delegates to the National Democratic and Republican Nominating Conventions were unconstitutional and further sought an injunction against both parties prohibiting the selection of delegates to their national nominating conventions on any basis other than a direct primary election.

Petitioner alleged that the action arose under the equal protection of law provision of the 14th amendment to the Constitution of the United States of America.

Petitioner alleged his standing to bring such suit as a citizen and taxpayer of the United States, a domiciliary and taxpayer of Montana,

a qualified voter in the Second Montana Congressional District, and a duly elected Democratic precinct committeeman of a precinct in Cascade County, Mont. Petitioner further alleged his substantial interest in seeing that his vote as a citizen and as a precinct committeeman counted neither more nor less than that of other voters and other precinct committeemen in the State of Montana.

In his amended petition in this case (hereinafter the *Doty* case), filed May 25, 1970, petitioner also sought relief in the form of an order requiring respondent State of Montana, through its county governments to reapportion its county precincts according to Federal constitutional standards and Montana law and requiring respondents Governor and secretary of state to assist in the reapportionment. In this amended petition, petitioner also asked for his "Costs, Disbursements and a reasonable Attorneys Fee necessarily incurred in this Action."

In November 1970, pursuant to motions made by the attorney general of Montana on the ground of governmental immunity, the State of Montana, the Governor of Montana, and the secretary of state of the State of Montana were dismissed as respondents from the *Doty* case.

At the same time, the Montana State Republican Central Committee was dismissed as a respondent because petitioner was a Democrat.

On July 26, 1971, the United States District Court for Montana filed an opinion holding that the "case presents a judicable controversy" and that "in the processes by which the Party nominates candidates for public office and selects delegates to the presidential nominating convention, it is governed by the Fourteenth Amendment," and proposing to enjoin the Democratic Party from violating the one-man, one-vote principle in its selection of candidates and delegates to the national convention.

On October 28, 1971, the United States District Court for the District of Montana, Helena Division, entered judgment in the *Doty* case which enjoined the Democratic Party of Montana from "nominating candidates to fill vacancies for elective offices or electing delegates who have any part in the selection of delegates to the national presidential nominating convention by any method which contravenes the one-man, one-vote principle." The court's opinion and order is reported in *Doty* v. *Montana State Democratic Central Committee*, 333 F. Supp. 49 (D. Mont. 1971).

Petitioner in 1970 incurred and paid, in connection with litigating the *Doty* case, an attorney's fee of $246.34, telephone expense of $62.25, supply expense of 98 cents, and photocopy expense of $19.65. He was not reimbursed for any portion of this $329.22 of litigation expenses.

Petitioner was not authorized by any official for the State of Montana to commence the *Doty* case, nor did any official of the United States or the State of Montana authorize petitioner to act on behalf of the United States in that case.

Petitioner did not request the advice or assistance of the United States Department of Justice or the United States Attorney General in the *Doty* case. He did not notify the United States Attorney General's Office of the filing of the case nor did he send that Office a copy of the original or the amended petitions filed in the case.

Petitioner did seek the opinion of the Montana State attorney general's office regarding his case and requested the Montana attorney general to join in the suit. The Montana attorney general declined to join petitioner and subsequently opposed him on behalf of the State of Montana, the Montana Governor, and the Montana secretary of state.

On his Federal income tax return for 1970, petitioner claimed a miscellaneous deduction in the amount of $329.22 with the explanatory notation, "legal fees to get equal protection." Respondent disallowed this claimed deduction.

OPINION

Petitioner contends that he is entitled to deduct the $329.22 of litigation costs under the provisions of section 170(c)(1),[2] as a gift to or for the use of the United States, or a State, or a political subdivision thereof or under section 1.170-2(a)(2), Income Tax Regs.,[3] as unreimbursed expenditures made incident to services to the United States or the State of Montana.

Respondent takes the position that the payment by petitioner was not exclusively for public purposes as required by section 170(c)(1), relying on *Fred S. Markham*, 39 B.T.A. 465 (1939), and that the payment was not a gift either to or for the benefit of the United States, the State of Montana, or any political subdivision of either, but rather for the benefit of petitioner and perhaps other persons who were members of the Democratic Party. In the *Markham* case a deduction for investigatory and other fees paid by the taxpayer incidental to procuring evidence sufficient to enable the Government to prosecute an extortionist threatening him and his family was denied on the basis that the

---

[2] SEC. 170(c). CHARITABLE CONTRIBUTION DEFINED.—For purposes of this section, the term "charitable contribution" means a contribution or gift to or for the use of—

(1) A State, a possession of the United States, or any political subdivision of any of the foregoing, or of the United States or the District of Columbia, but only if the contribution or gift is made for exclusively public purposes.

[3] Sec. 1.170-2(a)(2). No deduction is allowable for contribution of services. However, unreimbursed expenditures made incident to the rendition of services to an organization contributions to which are deductible may constitute a deductible contribution. * * *

taxpayer did not act "for exclusively public purposes," since he was motivated by fear for his own and his family's safety, and the desire to protect himself from a possible suit for false arrest. In so holding, we stated (39 B.T.A. at 471–472) :

Although it may be said that the United States was benefited in some degree by the expenditure on the part of petitioner, this benefit is not such as to bring the payments within the contemplation of the statutory provision. The mere fact that an act or expenditure on the part of the taxpayer indirectly, and in some unascertainable amount, may inure to the benefit of the Government does not entitle the taxpayer to a deduction therefor.

Petitioner contends that this case is distinguishable from the *Markham* case because he stood to benefit from the litigation to no greater extent than other voters in Montana. We have, of course, recognized that the direct benefit inuring to a taxpayer claiming a contribution "for exclusively public purposes" is "to be distinguished from the incidental benefit which inures to the general public from some transfers for public purposes and thus indirectly to the transferors as members thereof." *Jordon Perlmutter*, 45 T.C. 311, 318 (1965). Generally, cases which have denied a charitable deduction to a taxpayer on the basis that the gift was made for the purpose of securing some economic or other benefit for himself or some other person have involved a direct economic or other benefit to the taxpayer or another individual which differed in substantial degree from the benefit derived by members of the general public or some specific group. See, for example, *Arthur I. Saltzman*, 54 T.C. 722 (1970), denying the leader of a dance group which was a recognized charitable organization a deduction for expenses of a personal trip to Europe to attend dance festivals even though he imparted knowledge gained from the trip to the entire dance group; *Harris W. Seed*, 57 T.C. 265 (1971), involving a trip to participate in amateur sports events under the auspices of a charitable sports committee; *Grey B. (Miller) Tate*, 59 T.C. 543 (1973), involving an amount paid to send a minor son of the taxpayer to Europe in connection with a program that was to render some services to the American Farm School in Greece; *Jordon Perlmutter*, *supra*, and *Stubbs* v. *United States*, 428 F. 2d 885 (C.A. 9, 1970), both of which involved transfers of land for public purposes to obtain favorable zoning or other benefits for the remainder of the taxpayers' property. Obviously, the facts in the instant case differ from those in the above-cited cases in that here even though as stated in his amended petition in the *Doty* case, petitioner had a substantial interest in seeing his vote as a citizen and as a committeeman counted equally with all other votes, the other voters of the Democratic Party benefited equally with him from the expenditure to prosecute the suit.

This factual distinction does not, however, require a conclusion that the $329.22 is deductible under section 170(c)(1) or section 1.170–2(a)

(2), Income Tax Regs. It is still incumbent upon petitioner to show that the "gift" or "service" incidental to which the payment was made was "to or for the use of" the United States or the State of Montana and that it was "for exclusively public purposes."

Petitioner makes numerous arguments that what he did in bringing the *Doty* case satisfied the affirmative duty of the United States Attorney General and other Federal and Montana governmental officials to uphold our Constitution and guarantee to the State of Montana a republican form of government. He claims that he could have mandamused these officials to meet their duty in this respect and so he was rendering services to the United States or the State of Montana when instead he acted on their behalf. In this argument petitioner has assumed, without proof, that he would have been successful in such a mandamus suit and that had he informed the United States Attorney General of the suit, which the record shows he did not, the United States Attorney General would have approved of his proceeding with the suit with the assistance of a private attorney. The facts show that the secretary of state and Governor of Montana were initially named as respondents in the *Doty* case, but on motion of the attorney general of Montana the case was dismissed as to them. In the face of a record which shows that officials of the State of Montana were successful in having petitioner's suit against them, which attempted in part to require the State to reapportion county precincts, dismissed and shows no knowledge by any person connected with the Office of the United States Attorney General of the suit, clearly there has been no approval, either affirmative or tacit, by either the United States or the State of Montana of petitioner's action in bringing the suit. Certainly, there was no authorization by either Government to petitioner to bring the suit.[4] There was no "gift" by petitioner "to" either the United States or the State of Montana. On the basis of this record, we also conclude that there was no "gift" for the use of either of these Governments. An alleged "gift" dependent on an action outside the knowledge or even the tacit consent of an alleged recipient, is not the type of "gift" contemplated as deductible under section 170(c)(1).

Petitioner states that in certain cases in which an individual prevails in a suit brought for the benefit of a class of the public the court will allow that individual to recover from the defendant, not only court costs but also attorneys' fees. Although the record lacks evidence to such effect, petitioner argues that he chose not to pursue his right to reimbursement for attorneys' fees, and, therefore, waived this right. He concludes that this waiver was as if he had been awarded these

---

[4] Petitioner was represented in the *Doty* case by an attorney in private practice and the report of that case, 333 F. Supp. 49, shows that an attorney engaged in private practice represented the respondent State Democratic Central Committee.

fees and contributed the amount of the award to the "government." Even if we assume without proof that petitioner was entitled to recover attorneys' fees in the *Doty* case from the defendant and waived that right, we would not conclude that there was a resulting financial benefit to the State of Montana or the United States.[5] When the *Doty* case was decided, the only defendant in the case was the Montana State Democratic Central Committee. Therefore, had petitioner been entitled to recover attorneys' fees and waived that right, the Montana Democratic Party, which is not a governmental subdivision within the meaning of section 170(c)(1), would have been the sole beneficiary.

The facts in the instant case bear no resemblance to those in *Travis Smith*, 60 T.C. 988 (1973). In the *Smith* case the taxpayer went out to perform for his church with the knowledge and consent of his church and with the specific authorization contained in letters of commendation. His services to his church were services sought by the church from its members. Here, petitioner acted without the knowledge of the United States Government and without the consent of either the United States or Montana Government and with no authorization from either. Regardless of what may be the law of requiring payment by a government, in some instances, of attorneys' fees to a person bringing certain types of suits on the theory that even without the consent of the Government of the United States or the State, he is in effect acting on their behalf as a private attorney general, it would be incongruous to conclude that a "gift" had been made "to or for the use of" the Federal or State Government without the knowledge or consent of the appropriate officials. The record here does not support the conclusion that any services petitioner rendered were to or primarily for the benefit of the United States or the State of Montana as were the services of the taxpayer for his church in the *Smith* case. Since the record fails to support petitioner's premise that his services were to the United States or the State of Montana, it would follow that the expenditures of petitioner incidental to those services would not be a gift to or for the use of the United States or the State of Montana. Just as "not every payment to an organization which qualifies as a charity is a charitable contribution," *Estate of Willis D. Wood*, 39 T.C. 1, 6 (1962), so not every act of service to a segment of the public, regardless of how

[5] The record shows that petitioner, in his amended complaint in the *Doty* case, asked for an award of attorneys' fees but does not show why the award was not granted. In one of the cases petitioner cites the issue as to attorneys' fees was presented on a motion made after entry of judgment on the merits of the case. *Sims* v. *Amos*, 340 F. Supp. 691 (M.D. Ala. 1972). In *Newman* v. *Piggie Park Enterprises*, 390 U.S. 400 (1968), and *Lee* v. *Southern Homes Sites Corp.*, 444 F. 2d 143 (C.A. 5, 1971), cited by petitioner, the defendants against whom attorneys' fees were taxed were private corporations, and in *Sims* v. *Amos*, *supra*, costs were taxed against the State legislators, the Governor, and the State attorney general and secretary of state, individually, but not against the State or a political subdivision thereof or the United States.

laudable, is service to the United States or a State, or a political subdivision of either. It is only unreimbursed expenditures incidental to rendition of services "to" an organization, contributions to which are deductible, which give rise to a charitable deduction. Petitioner has failed to show that the litigation expenses he paid in 1970 fall within this category.

*Decision will be entered for the respondent.*