MAURICE M. DILLON, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Dillon v. Commissioner
Docket No. 15461-79.
United States Tax Court
T.C. Memo 1981-583; 1981 Tax Ct. Memo LEXIS 160; 42 T.C.M. (CCH) 1364; T.C.M. (RIA) 81583; October 6, 1981. Maurice Malcolm Dillon, pro se. William P. Hardeman, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: Respondent determined the following deficiencies in petitioner's Federal income taxes and additions to tax: Additions to Tax
Year
Deficiency
Sec. 6651(a)
Sec. 6653(a)
Sec. 6654 [1]
1972
$ 1,573.15
$ 217.86
$ 78.66
1973
1,298.68
321.23
64.93
$ 14.01
*163 Some concessions have been made by the parties and will be given effect in the Rule 155 computations. The issues remaining for decision are: (1) whether the assessment of taxes for both years is barred by the statute of limitations; (2) whether petitioner had net losses or income from California rental property for the years 1972 and 1973 and the amounts thereof; (3) whether petitioner should be allowed claimed capital losses for 1972 and 1973 or a capital gain of $2,275 for 1972 and a capital loss for 1973 of $ 1,000 as determined by respondent; (4) whether petitioner is entitled to deductions for both years in excess of the amounts allowed by respondent; (5) whether petitioner is entitled to a deduction under section 165(a) for a loss allegedly incurred in his trade or business; (6) whether petitioner is entitled to dependency exemption deductions for his two minor daughters, who were in the custody of his former wife; and (7) whether petitioner is liable for the additions to tax under sections 6651(a), 6653(a) and 6654. There *164 are various subsidiary issues which are presented with respect to the major issues stated above. To facilitate the disposition of the case the Court will amalgamate its findings of fact and discussion of the legal issues. Some facts have been stipulated and are so found. Maurice Malcolm Dillon (petitioner) was a legal resident of Albuquerque, New Mexico, when he filed his petiton in this case. For each of the taxable years 1972 and 1973 he timely mailed to the Internal Revenue Service Center at Austin, Texas, a Form 1040, which states his name and address but contains no information or data pertaining to his Federal income taxes. Written across the face of the Form 1040 is a statement that petitioner protests "this form and the income tax law because they are in violation of my individual and constitutional rights." Attached to each Form 1040 is a letter of explanation signed by the petitioner. Respondent did not treat the Form 1040 as a Federal income tax return for either year. Petitioner was subsequently indicted and convicted for willfully failing to file income tax returns for 1972 and 1973 in violation of section 7203. The judgment of conviction was affirmed in *165 United States v. Dillon, 566 F.2d 702 (10th Cir. 1977), cert. denied 435 U.S. 971 (1978). After an audit of the years 1972 and 1973, in which the petitioner cooperated by providing information, respondent sent the petitioner a notice of deficiency dated August 6, 1979, which specified the following adjustments to income: 1972
1973
Wages
$ 11,835.35 $ 11,035.16 Interest Income
165.44 424.08 Rental Income or Loss
(419.37)
75.00 Capital Gains and Losses
2,275.90 (1,000.00)
Itemized Deductions
(3,897.97)
(1,858.41)
Personal Exemptions
(1,500.00)
(1,500.00)
The parties agree that the amounts received by petitioner as wages and interest income are correct. 1. Statute of Limitations
Petitioner alleged in his petition and contends on brief that the period for assessing taxes for the years 1972 and 1973 is barred by the statute of limitations because there have been "no charges of fraud, tax evasion or criminal intent" against him. Respondent affirmatively alleged in his answer that the period of limitations for assessment has not expired because no returns were filed for those years. We agree *166 with the respondent. Since each Form 1040 mailed to the Austin Service Center reported no gross income deductions or other information it does not constitute a "return" within the meaning of sections 6011(a) and 6012. United States v. Porth, 426 F.2d 519 (10th Cir. 1970), cert. denied 400 U.S. 824 (1970); Cupp v. Commissioner, 65 T.C. 68, 79-80 (1975), affd. without published opinion 559 F.2d 1207 (3d Cir. 1977). Where no return is filed the Commissioner may make an assessment at any time under the provisions of section 6501(c)(3). 2. Rental Income or Loss
There is some disagreement regarding this adjustment. Respondent determined in his notice of deficiency that the petitioner had $ 840 in gross rental income for 1972, $ 592.37 in expenses and $ 667 in depreciation. Based upon a statement received from his lawyer, petitioner had advanced $ 100 of his own funds to his lawyer to bring an eviction action against his tenant. Therefore, his loss for 1972 was $ 519.37 instead of $ 419.37 on the rental house located in *167 Gardena, California. Petitioner asserts that he is not required to claim the depreciation allowance on the house for eight months in 1972. We disagree. He is required to recognize that allowable depreciation is applicable to reduce basis during the years the capital asset was devoted to the production of income. He cannot elect to apply or not to apply the depreciation figure in a way that will be of most benefit to him. P. Dougherty Co. v. Commissioner, 159 F.2d 269 (4th Cir. 1946); Kittredge v. Commissioner, 88 F.2d 632 (2d Cir. 1937). It is a settled principle that depreciation allowable for one year cannot be postponed or taken in a later year. Thus, a failure to deduct allowable depreciation may result in the loss of the deduction even though the basis for gain or loss is still reduced by the allowable depreciation. Petitioner admitted having gross rental income in 1973 of $ 75 for rent received on a vacant lot. He testified that he allowed the renter to obtain water from his property and he claimed an expense of $ 15 for furnishing the *168 water. Based upon these two figures, he claimed net rental income of $ 60. Respondent determined that petitioner had rental income of $ 75 in 1973. We accept the petitioner's testimony as to the water expense and hold that his net rental income was $ 60 in 1973. 3. Capital Gains and Losses
For the year 1972 respondent determined that the petitioner realized a net long term capital gain of $ 4,551.81, subject to the deduction provided by section 1202, as follows: Gain on sale of lots
$ 4,597.00 Loss on sale of rent house
(45.19)
Net gain
$ 4,551.81 Section 1202 deduction
(2,275.91)
Taxable gain
$ 2,275.90 Petitioner alleged in his petition that he had a capital loss of $ 5,063.45 for 1972. A. Sale of Albuquerque Vacant Lots
On October 20, 1971, petitioner purchased a house on 3.9 acres of land located at 6305 Camino Ocho, S.W., Albuquerque, New Mexico. On August 30, 1972, and September 12, 1972, the petitioner contracted to sell two portions of the vacant land. The provisions in the real estate contracts included terms of monthly installment payments, but no deeds were transferred to the purchaser, and one of the options open *169 to petitioner, as the owner/seller, was to consider the payments as rental payments if the purchaser defaulted on any payment for more than 30 days. When the petitioner sold the lots, severing them from his home, he believed he would have to recognize no profit until he received the proceeds in excess of basis in the entire property, his home included. Since he did not receive full payment for the property in the year of sale (1972), part of his position would find credence in recognition of income due to a sale on the installment method. But the petitioner is not entitled to the benefit of the installment method because that method refers to the manner that sales are "returned." Section 453. Consequently, it is an election and it must be made on a return. Petitioner filed no return for 1972; therefore, he must recognize the gain in 1972 in accordance with the contracts. Respondent allocated petitioner's basis to the lots and to the retained property on a ratio basis compared to valuations in the county property tax records, and then determined petitioner's gain as stated in the contracts *170 furnished by petitioner. By this method the respondent determined that petitioner had a gain on the lots of $ 4,597. We think this determination is correct. [2]
B. Sale of Gardena Rental House
Petitioner purchased a house in Gardena, California, on July 13, 1965, for the total price, including closing costs, of $ 25,677.82. He converted this house to rental property in 1970. He sold the house on August 23, 1972, for $ 28,000. Respondent calculated depreciation on the house while rental property as follows: Costs
$ 25,678.00
Land Allocation
5,678.00
Depreciable Amount
20,000.00./. 20 year life =
$ 1,000.00 per year
1970 (used 3 months)
$ 250.00
1971 (used 12 months)
1,000.00
1972 (used 8 months)
667.00
Total
$ 1,917.00
Petitioner was allowed depreciation of $ 667 in the calculation of his rental loss for 1972. Petitioner's basis in the house at the time of sale was $ 25,667.82 minus $ 1,917, or $ 23,760.82. The expenses of sale were as follows: Commission
$ 1,680.00
Forwarding Fee
25.00
Prepayment
418.51
Late Charge
4.88
Discount Points (4)
1,064.00
Prepayment
83.68
Forwarding Fee
25.00
Termite Inspection Fee
125.00
Title Policy
181.50
Internal Revenue Stamps
30.80
Recording Documents
6.00
Reconveyance Fee
40.00
Title Company's Subescrow Fee
5.00
Escrow Fee
110.00
Drawing Documents
10.00
Service Charge
20.00
Repairs
355.00
Credit to Buyer
100.00
Total Expenses
$ 4,284.37
*171 The amount realized from the sale of the property was $ 28,000 minus $ 4,284.37, or $ 23,715.63. Therefore, respondent determined that petitioner had a loss on the sale as follows: Amount Realized on Sale
$ 23,715.63 Basis
23,760.82 Net Long-Term Capital Loss
(45.19)
Petitioner calculated the expenses of sale by taking the sales price and subtracting the loan balance and the proceeds that he received. He then applied his figure for expenses to the sales price of the house and applied it again to increase the basis, thus resulting in a double benefit. Petitioner also added to the basis his costs of borrowing money against the equity in the house. However, borrowing money on the equity has nothing to do with petitioner's purchase of the house, and therefore it could not increase the basis. It would appear that if a fee were connected with the second lien, it would be money borrowed from the loan company. If it were a loan for the purchase price, it would appear that the loan company would require it to be part of the purchase money mortgage. The fees in relation to either the second or third loan did not increase petitioner's basis in the property. *172 Accordingly, we hold that that the petitioner had a loss on the sale of the rental house only to the extent of $ 45.19. C. Bed Debt Loss for 1973
In his notice of deficiency respondent determined that petitioner incurred a loss of $ 2,903 from a nonbusiness bad debt which was treated as a short-term capital loss subject to a maximum capital loss deduction of $ 1,000. Petitioner alleged in his petition that he had a capital loss of $ 2,903 resulting from the nonpayment of a secured promissory note for the amount owed to petitioner. We sustain respondent with respect to this adjustment. Petitioner acknowledged at the trial that this was a nonbusiness bad debt and that only a $ 1,000 capital loss should be allowed for 1973. Petitioner stated in his opening brief that he has filed amended tax returns for 1974 and 1975 claiming capital loss carryovers. 4. Itemized Deductions
In his notice of deficiency respondent allowed petitioner the following itemized deductions: 1972
1973
Interest
$ 1,560.88
$ 382.44
Taxes
1,819.73
901.89
Contributions
124.00
154.32
Miscellaneous
393.36
419.76
Total
$ 3,897.97
$ 1,858.41
Petitioner *173 alleged in his petition that he should be allowed itemized deductions of $ 4,654.09 for 1972 and $ 4,030.34 for 1973. Based on the documentary evidence submitted, the petitioner has substantiated and is entitled to the following itemized deductions for the years in issue: 1972
1973
Interest
$ 1,560.88
$ 700.12
Taxes
1,819.73
992.66
Contributions
124.00
148.32
Miscellaneous
393.36
419.76
Total
$ 3,897.97
$ 2,260.86
In addition to the above deductions, the petitioner paid legal fees and court costs in total amounts of $ 626 for 1972 and $ 1,749.37 for 1973 in his efforts as a "Citizen Attorney General" to have portions of the New Mexico primary election laws and the legislative procedure of "stopping the clock" declared unconstitutional. Petitioner, who was an unsuccessful candidate for the Democratic nomination for the United States Senate in New Mexico, apparently succeeded in his efforts to have such laws invalidated it part. Petitioner argues that his Court actions in 1972 and 1973 were "for the benefit of the state [New Mexico] and for public purposes," and therefore his litigation expenses should be allowed as deductions under sections *174 170(a)(1) and 170(c)(1). [3] Respondent takes the position that the payments made by the petitioner were not gifts either to or for the benefit of the State of Mexico or the United States. Under Section 170 a showing *175 that a claimed contribution has benefited a qualified donee is clearly a prerequisite to deductibility. See Tate v. Commissioner, 59 T.C. 543, 550-551 (1973). Nothing in this record shows that the petitioner's legal actions were brought with the consent of the State of New Mexico or the United States or for their benefit. Petitioner has failed to meet his burden of proof. Our prior opinions in Doty v. Commissioner, 62 T.C. 587, 590-593 (1974), and Markham v. Commissioner, 39 B.T.A. 465, 471-472 (1939), are controlling with respect to this issue, and we decide it for the respondent. Cf. Southern Pacific Transportation Co. v. Commissioner, 75 T.C. 497, 600-605 (1980). 5. Claimed Business Loss
Petitioner has alleged that he sustained a loss of $ 1,567.16 in 1972 in connection with an earthmoving business he had with his brother, R. K. Dillon. In 1971 petitioner's brother operated a dirt contracting business in Las Vegas, New Mexico, under the name of R. K. Dillon, Contractor. In May 1971 he moved the business to Albuquerque. He and petitioner planned to go into business together, but their plans *176 did not work out. Petitioner borrowed $ 4,000 to invest in the business. He loaned his brother money by making payments on equipment, namely, $ 2,893 to Rust Tractor Company and $ 371.07 to Rain for Rent. No notes or agreements were signed with respect to these loans. Petitioner worked for his brother from June through August 1971. He was paid no salary and he provided his personal automobile for use in the business without any reimbursement. During 1971, R. K. Dillon repaid petitioner $ 1,850 on the loans. In 1972 he gave petitioner some additional small cash payments. After he inherited money from his mother's estate in May 1972, R. K. Dillon made another cash payment to petitioner which they agreed "would about pay him back." We hold on these facts that the petitioner should not be allowed a loss deduction under section 165 because (1) he has failed to prove that there was a partnership existing between him and his brother and (2) the evidence shows that he simply loaned money to his brother, cosigned a note with him, and was later repaid the amount he loaned. The testimony of R. K. Dillon supports this conclusion. 6. Dependency Deductions
In addition to *177 the two dependency exemptions for himself and his son, which were allowed by respondent in the notice of deficiency, petitioner claims dependency exemption deductions for his two minor daughters, Trina and Micki, who were in the custody of his former wife, during 1972 and 1973. Petitioner and his former wife were the joint owners of a house located on Spinning Avenue in Gardena, California. His daughters resided there while living with their mother. Petitioner made the total monthly house payments, although the property settlement and divorce decree required him to pay only half. The other half was paid in lieu of child support. Petitioner made total house payments of $ 2,022 in 1972 and $ 2,016 in 1973. Since he is entitled to treat one-half of the house payments as support for his daughters, he should be credited with $ 1,011 in 1972 and $ 1,088 towards their support. In addition, petitioner paid the amounts of $ 519 in 1972 and $ 650 in 1973 as living expenses for his daughters. These amounts did not include the expenses for his daughters when they resided with him in Albuquerque. The total amounts paid for their support were at least $ 1,530 in 1972 and $ 1,658 in 1973. *178 Petitioner claims the two exemptions under the provisions of section 152(e)(2)(B), which was in effect prior to October 5, 1976. It stated that if the parent not having custody provides $ 1,200 or more for the support of such children for the calendar year, and the parent having custody does not clearly establish that he or she provided more for the support of the children than the parent not having custody, then the children will be treated as having received over half of their support during the calendar year from the noncustodial parent. Respondent concedes that it is not clearly established that the petitioner's former wife provided more support for his two daughters than he did. Accordingly, in view of our findings that the petitioner, as the noncustodial parent, provided more than $ 1,200 for the support of his daughters in 1972 and 1973, it follows that under section 152(e)(2)(B) the petitioner is entitled to the dependency exemption deductions for both daughters for both years. We so hold. 7. Additions to Tax
A. Section 6651(a)
Petitioner did not file, and he *179 has never filed, valid Federal income tax returns for 1972 and 1973. Prior to filing the "protest" Forms 1040 for such years, he had a history of filing valid Federal income tax returns. He also filed a valid and complete return for 1976. Therefore, he knew how to make a valid return. Indeed, the forms he filed show that he clearly intended not to file valid tax returns for those years because he wanted to challenge the constitutionality of the Federal income tax laws. Petitioner has offered no evidence to show that his failure to file valid income tax returns was due to reasonable cause, as required by section 6651(a). Hatfield v. Commissioner, 68 T.C. 895, 898-899 (1977). Petitioner contends that he should not be liable for the additions to tax for failure to file timely income tax returns since he was convicted for the same omissions on criminal charges under section 7203. He argues that the civil "penalty" offends the double jeopardy clause of the Constitution of the United States. Double jeopardy is precluded by the Fifth Amendment whether the verdict is acquittal *180 or conviction, but the double jeopardy clause does not preclude the imposition of both a criminal and a civil sanction with respect to the same act or omission. Helvering v. Mitchell, 303 U.S. 391, 404-405 (1938). Congress intended to permit the imposition of civil penalties in addition to punishment in criminal proceedings. See Hanby v. Commissioner, 67 F.2d 125, 130 (4th Cir. 1933). The remedial, rather than punitive, character of sanctions imposing additions to a tax is clear. They are provided primarily as a safeguard for the protection of the revenue and to reimburse the Government for the heavy expense of investigation and the loss resulting from the taxpayer's actions. Helvering v. Mitchell, supra at 401. Thus there is no merit to petitioner's double jeopardy argument. Accordingly, we sustain respondent's determination with respect to the section 6651(a) additions to tax. B. Section 6653(a)
Petitioner had adequate records of his income and deductions which he showed to the revenue agents during the joint investigation *181 and offered in evidence at the trial of this case. He could have used such information in preparing and filing valid Federal income tax returns for 1972 and 1973. His failure to do so was due to negligence or intentional disregard of rules and regulations. Hatfield v. Commissioner, supra at 898-899. Therefore, the respondent's imposition of the additions to tax under section 6653(a) is upheld. C. Section 6654
In his notice of deficiency respondent determined that the petitioner is liable for the addition to tax under section 6654 for the year 1973 for failure to make timely estimated tax payments. Petitioner has failed to carry his burden of proof on this issue. Therefore, we sustain respondent's determination. 8. Constitutional Arguments
At different times, in his documents, pleadings and briefs, the petitioner has asserted an array of constitutional arguments, all of which lack merit. Petitioner's constitutional challenge to the Federal income tax must be rejected. The constitutionality of the Federal income tax laws passed since the enactment of the Sixteenth Amendment has been upheld judicially on too many occasions for us presently *182 to rethink the underlying validity thereof. See, e.g., Brushaber v. Union Pac. R.R. Co., 240 U.S. 1 (1916); Stanton v. Baltic Mining Co., 240 U.S. 103 (1916); Cupp v. Commissioner, 65 T.C. 68 (1975), affd. 559 F.2d 1207 (3d Cir. 1977). Furthermore, the Sixteenth Amendment was enacted in response to the Supreme Court's decision in Pollock v. Farmers' Loan & Trust Co., 157 U.S. 429 (1895), which held unconstitutional the income tax of 1894 as a direct tax without apportionment. The "whole purpose" of the Sixteenth Amendment, as stated by the Supreme Court in Brushaber v. Union Pac. R.R. Co., supra at 18 was "to relieve all income taxes when imposed from apportionment from a consideration of the source whence the income was derived." It is also clear that the petitioner's Fifth Amendment rights have not been violated. The Fifth Amendment does not excuse any individual from reporting his income and filing an income tax return. United States v. Sullivan, 274 U.S. 259 (1927); *183 United States v. Porth, 426 F.2d 519 (10th Cir. 1970), cert. denied 400 U.S. 824 (1970). Petitioner's First Amendment arguments must also be rejected. Greenberg v. Commissioner, 73 T.C. 806, 810-811 (1980); Muste v. Commissioner, 35 T.C. 913 (1961). To reflect concessions and our conclusions on the disputed issues, Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the years at issue, unless otherwise indicated.↩
2. Petitioner has a gain for the year 1972 to the extent that the amount received by him in that year exceeded his adjusted basis in the property.↩
3. SEC. 170. CHARITABLE, ETC., CONTRIBUTIONS AND GIFTS. (a) Allowance of Deduction.-- (1) General rule.--There shall be allowed as a deduction any charitable contribution (as defined in subsection (c)) payment of which is made within the taxable year. A charitable contribution shall be allowable as a deduction only if verified under regulations prescribed by the Secretary or his delegate. (c) Charitable Contribution Defined.--For purposes of this section, the term "charitable contribution" means a contribution or gift to or for the use of-- (1) A State, a possession of the United States, or any political subdivision of any of the foregoing, or the United States or the District of Columbia, but only if the contribution or gift is made for exclusively public purposes.↩