M. O. SIMS et al., Plaintiffs,

R. E. Farr et al., Intervening Plaintiffs,

United States of America, Plaintiff and Amicus Curiae,

v.

Mabel AMOS, Secretary of State of the State of Alabama, et al., Defendants,

Pierre Pelham et al., Intervening Defendants.

E. D. NIXON et al., Plaintiffs,

Alabama Independent Democratic Party, a corporation, Plaintiff-Intervenor,

v.

George C. WALLACE, as Governor of the State of Alabama, et al., Defendants,

Pierre Pelham et al., Intervening Defendants.

J. Elbert PETERS, individually, for himself, and for all others similarly situated, Plaintiff,

v.

George C. WALLACE, as Governor of the State of Alabama, et al., Defendants,

Pierre Pelham et al., Intervening Defendants.

Civ. A. Nos. 1744–N, 3017–N, and 3459–N.

United States District Court,
M. D. Alabama, N. D.
March 17, 1972.

Ira DeMent, U. S. Atty., M. D., of Ala., Montgomery, Ala., for the United States.

William J. Baxley, Atty. Gen., State of Ala., Gordon Madison, Asst. Atty. Gen., Montgomery, Ala., and Julian D. Butler, Sp. Asst. Atty. Gen., Butler & Potter, Huntsville, Ala., for Mabel Amos and William J. Baxley and others.

James H. Hancock, Balch, Bingham, Baker, Hawthorne & Williams, Birmingham, Ala., for J. Richard Bennett, Jr., and Carolyn Golden.

Robert S. Vance, Callaway & Vance, Birmingham, Ala., pro se and for the Democratic Party and State Executive Committee.

Jack Crenshaw and B. M. Waller, Crenshaw & Waller, Montgomery, Ala., for Pierre Pelham and others.

James W. Garrett, Rushton, Stakely, Johnston & Garrett, Montgomery, Ala., for L. D. Owen, Jr., and others.

William L. Irons, Speir & Irons, Birmingham, Ala., for Jefferson County Citizens Committee for Local Self-Government, its corporate officers and members.

Maurice Bishop, Bishop & Carlton, Birmingham, Ala., for Jefferson County, Ala.

Morris Dees, Jr., and Joseph J. Levin, Jr., Montgomery, Ala., Orzell Billingsley, Jr., Peter A. Hall, C. H. Erskine Smith, Birmingham, Ala., for E. D. Nixon and others.

David Vann, Birmingham, Ala., for Independent Democratic Party, a corp.

Dieter J. Schrader, Huntsville, Ala., for J. Elbert Peters, etc.

Before RIVES, Circuit Judge, and THOMAS and JOHNSON, District Judges.

PER CURIAM:

On January 3, 1972, in a formal opinion and decree, 336 F.Supp. 924, this Court declared that the Alabama Legislature was malapportioned and that, as a result, plaintiffs were underrepresented in the State Legislature and were de-

Morris Dees, Jr., and Joseph J. Levin, Jr., Montgomery, Ala., Charles Morgan, Jr., Morris Brown and Norman Siegel, Atlanta, Ga., for M. O. Sims, and others.

nied the right to equal suffrage in violation of the Fourteenth and Fifteenth Amendments to the United States Constitution. Pursuant to its declaration, the Court adopted and ordered the implementation of plaintiffs' proposed reapportionment plan which was based on single-member legislative districts.[1] On January 14, 1972, plaintiffs filed with the Court a bill for costs incurred in litigating this case [2] and also moved that they be awarded attorneys' fees in the amount of $16,572.50.[3] Plaintiffs asked that these expenses be assessed against Alabama's State Legislators, Secretary of State, Attorney General and Governor.[4] On February 23, 1972, at a hearing on the merits of the motion and cost bill, plaintiffs offered evidence, all of which was undisputed. The case now is submitted upon the motion for attorneys' fees, the cost bill, the evidence, and the oral arguments and briefs of the parties.[5]

As to plaintiffs' motion for an allowance of attorneys' fees, the rule is well settled that such an award may be made in the exercise of the equity powers of the court. See, e. g., Sprague v. Ticonic Bank, 307 U.S. 161, 166, 59 S.Ct. 777, 83 L.Ed. 1184, et seq. (1939); Dyer v. Love, 307 F.Supp. 974 (N.D.Miss. 1969); 6 Moore's Federal Practice ¶ 54.-77[2]. Each case must be decided according to its own peculiar facts. Defendants contend, of course, that the facts in the present suit do not justify the award. They argue primarily that they have not been arbitrary, unreasonable, or obdurately obstinate with regard to reapportionment or with regard to the defense of this lawsuit, and that in the absence of bad faith, a grant of attorneys' fees is unwarranted. As plaintiffs have demonstrated, however, this argument, as it relates to the Legislature, is devoid of any factual basis. The history of the present litigation is replete with instances of the Legislature's neglect of, and even total disregard for, its constitu-

1. The Court denied plaintiffs' request that an election of State Legislators be held midterm to effectuate the single-member district reapportionment plan.

2. This litigation consists of three consolidated cases. For the sake of convenience, however, in the text, these cases will be referred to in the singular. All relevant questions of law and fact are the same in each case.

3. The parties have stipulated that $1,750.-00 claimed for fifty hours of work devoted to preparing a synopsis of the racial legislative history of Alabama, 1945 to date, should be subtracted from plaintiffs' request for attorneys' fees. The parties agree that the remaining $14,822.50 is a reasonable charge and that if plaintiffs are entitled to recover a fee, they should be awarded that amount. This Court not only concurs in the reasonableness of the sum claimed by plaintiffs, but, under the circumstances, finds it to be modest.

4. The Secretary of State, Attorney General and Governor are named defendants in this litigation. On August 12, 1971, Pierre Pelham, John W. Cook, L. L. Dozier, Hugh D. Merrill, Chriss H. Doss, and John S. Casey, individually and as members of the Joint Legislative Committee of the Legislature of Alabama, and as members, either of the Senate of Alabama or of the House of Representatives of Alabama, on behalf of themselves and on behalf of the class of which they are members, filed a petition for leave to intervene. This petition was granted by order of the Court made and entered August 13, 1971. On February 23, 1972, at the hearing on the motion for taxation of costs and attorneys' fees, plaintiffs asked that these expenses be assessed only against the Governor, Attorney General, Secretary of State and State Legislators, and that all other defendants, named or intervening, be excused from liability for such expenses.

5. On March 3, 1972, notices of appeal were filed by the Secretary of State, Attorney General and Governor from the decree of January 3, 1972, but that does not prevent this Court from proceeding with collateral or independent matters not involved in such appeal. 9 Moore's Federal Practice ¶ 203.11. Indeed it is all the more urgent that the costs be taxed and the entire action be determined so as to be reviewable on one appeal, whether on the present notices of appeal or on others to be filed subsequent to this opinion and order.

tional obligation to reapportion.[6] Although the legal principles applicable to this case were clear to the Legislature and had often been pointed out and emphasized by this Court in an effort to prompt legislative action,[7] and although the 1970 decennial census demonstrated that the Alabama Legislature was egregiously malapportioned, the Legislature unyieldingly refused to perform the mandate imposed upon it by both the State and Federal Constitutions. It is indisputable that the Legislature's deliberate failure to act precipitated and in fact necessitated this litigation. Justice would not be served were that body to escape responsibility for attorneys' fees.

 In addition to the Legislature's inaction as a factor which necessitated this suit, the submissions of obviously unacceptable plans by other of the defendants also could be characterized as acts of bad faith which contributed to the expense of litigation. See Bradley v. School Bd. of Richmond, 53 F.R.D. 28 (E.D.Va.1971). Nevertheless, a finding of bad faith is not always a prerequisite to the taxing of attorneys' fees against defendants, and in this case, despite the availability of that ground, the Court has decided to base its award on far broader considerations of equity.[8]

 In instituting the case *sub judice,* plaintiffs have served in the capacity of "private attorneys general" seeking to enforce the rights of the class they represent. See generally Newman v. Piggie Park Enterprises, Inc., 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968); Miller v. Amusement Enterprises, Inc., 426 F.2d 534 (5th Cir. 1970). If, pursuant to this action, plaintiffs have benefited their class and have effectuated a strong congressional policy, they are entitled to attorneys' fees regardless of defendants' good or bad faith. See Mills v. Electric Auto-Lite Co., 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970). Indeed, under such circumstances, the award loses much of its discretionary character and becomes a part of the effective remedy a court should fashion to encourage public-minded suits, *id.,* and to carry out congressional policy. Lee v. Southern Home Sites, 444 F.2d 143 (5th Cir. 1971).

The present case clearly falls among those meant to be encouraged under the principles articulated in *Piggie Park Enterprises, Inc.* and *Mills,* and expanded upon in *Southern Home Sites* and *Bradley.* The benefit accruing to plaintiffs' class from the prosecution of this suit cannot be overemphasized. No other right is more basic to the integrity of our democratic society than is the right plaintiffs assert here to free and equal suffrage. In addition, congressional policy strongly favors the vindication of federal rights violated under color of state law, 42 U.S.C. § 1983, and, more specifically, the protection of the right to a nondiscriminatory franchise.[9] See*j*

---

6. See Sims v. Amos, 336 F.Supp. 924 at pages 930–932, 1972, for a discussion of the Legislature's role in the history of the present litigation.

7. *Id.*

8. Individuals who, as officers of a state, are clothed with some duty with regard to a law of the state which contravenes the Constitution of the United States, may be restrained by injunction, and in such a case the state has no power to impart to its officers any immunity from such injunction or from its consequences, including the court costs incident thereto. Ex parte Young, 209 U.S. 123, 160, 28 S.Ct. 441, 52 L.Ed. 714 (1908); cases collected in U.S.C.A. Note 121 to Amendment 11 of the Constitution of the United

States; Williams v. Eaton, 443 F.2d 422, 428 (10th Cir. 1971).

9. In Alabama, this strong congressional policy favoring a nondiscriminatory franchise often has been effectuated by private litigants bearing their own expense, *e. g.,* Hadnott v. Amos, 394 U.S. 358, 89 S.Ct. 1101, 22 L.Ed.2d 336 (1969); Moody v. Flowers, 387 U.S. 97, 87 S.Ct. 1544, 18 L.Ed.2d 643 (1967); Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964); Gomillion v. Lightfoot, 364 U.S. 339, 81 S.Ct. 125, 5 L.Ed.2d 110 (1960); Smith v. Paris, 386 F.2d 979 (5th Cir. 1967); Gilmore v. Greene Co. Democratic Exec. Committee, 368 F.2d 328 (5th Cir. 1966); Kennedy v. Bruce, 298 F.2d 860 (5th Cir. 1962); Alabama

the Voting Rights Act of 1965, 79 Stat. 437, 42 U.S.C. § 1973; the Civil Rights Acts of 1964, 78 Stat. 241, 42 U.S.C. § 1971; of 1960, 74 Stat. 86, and of 1957, 71 Stat. 634; and U.S.Const., amends. XIV and XV. It is of no consequence that the statute under which plaintiffs filed this suit, 42 U.S.C. § 1983, is silent on the availability of attorneys' fees. See Long v. Georgia Kraft Co., 455 F.2d 331, 5th Cir., 1972, and the many cases cited therein; Knight v. Auciello, 453 F.2d 852 (1st Cir. 1972).

Despite the benefit to plaintiffs' class, however, and despite this suit's effectuating the purposes of congressional legislation, the case *sub judice* is one most private individuals would hesitate to initiate and litigate. Circumstances described in *Bradley* as rendering school desegregation suits unattractive to prospective plaintiffs apply with equal force to reapportionment cases:

> " . . . No substantial damage award is ever likely, and yet the costs of proving a case for injunctive relief are high. To secure counsel willing to undertake the job of trial, including the substantial duty of representing an entire class . . . necessarily means that someone—plaintiff or lawyer—must make a great sacrifice unless equity intervenes. . . . "

Consequently, in order to attempt to eliminate these impediments to *pro bono publico* litigation, such as is here involved, and to carry out congressional policy, an award of attorneys' fees is essential.

As to plaintiffs' demand for costs,[10] defendants contend that only certain of the items claimed are statutorily authorized while the taxability of others depends on the presence of elements simi-

lar to those traditionally required for the assessment of attorneys' fees, *e. g.*, bad faith on the part of defendants. This contention need not be considered,[11] as the Court has found bad faith and has concluded that recovery of attorneys' fees should be allowed.

Accordingly, it is the order, judgment and decree of this Court that the following costs be and the same are hereby taxed against the Alabama State Legislators, the Governor, the Attorney General and the Secretary of State:

1. Plaintiffs' costs in the amount of $10,024.15;

2. Clerk's costs in the amount of $3,235.55; and

3. Attorneys' fees in the amount of $14,822.50.

It is further ordered that said costs and attorneys' fees be paid within thirty days from this date.

---

ex rel. Gallion v. Rogers, 285 F.2d 430 (5th Cir. 1961); Hadnott v. Amos, 325 F.Supp. 777 (M.D.Ala.1971); Sellers v. Trussell, 253 F.Supp. 915 (M.D.Ala. 1966); Williams v. Wallace, 240 F.Supp. 100 (M.D.Ala.1965); Sellers v. Wilson, 123 F.Supp. 917 (M.D.Ala.1954).

10. Plaintiffs originally claimed costs totalling $10,204.15. By agreement, $180.00 was subtracted from this amount because

of a miscalculation by plaintiffs. The total now claimed is $10,024.15.

11. Nevertheless, this Court does feel it appropriate to observe that Dr. David Valinsky performed a function which this Court otherwise would have appointed a master to accomplish. Dr. Valinsky performed both efficiently and economically. The costs of his services clearly are taxable against defendants.