N. H. NEWMAN et al.,
Respondents-Appellees,

v.

STATE OF ALABAMA and Bill Baxley, Attorney General for the State of Alabama, Petitioners-Appellants,

United States of America,
Amicus Curiae.

No. 73–2033.

United States Court of Appeals,
Fifth Circuit.

Oct. 29, 1975.

Gewin, Circuit Judge, with whom Brown, Chief Judge, and Wisdom, Thornberry and Goldberg, Circuit Judges, joined, dissented with opinion.

William J. Baxley, Atty. Gen., Montgomery, Ala., Herbert H. Henry, Asst. Atty. Gen., Birmingham, Ala., George Beck, Thomas Sorrels, Asst. Attys. Gen., Montgomery, Ala., for petitioners-appellants.

Joseph D. Phelps, Philip H. Butler, Montgomery, Ala., for respondents-appellees.

Michael S. Loftman, Civil Rights, Dept. of Justice, Washington, D. C., Ira DeMent, U. S. Atty., Montgomery, Ala., J. Stanley Pottinger, Asst. Atty. Gen., Patricia G. Littlefield, Atty., Civ. Div., Dept. of Justice, Walter W. Barnett, Atty., Dept. of Justice, Civ. Rights Div., Washington, D. C., amicus curiae.

Before BROWN, Chief Judge, and WISDOM, GEWIN, BELL, THORNBERRY, COLEMAN, GOLDBERG, AINSWORTH, GODBOLD, DYER, SIMPSON, MORGAN, CLARK, RONEY and GEE, Circuit Judges.

PER CURIAM:

The judgment of the district court as it relates to the award of attorneys' fees,* *Newman v. State of Alabama,* M.D.Ala., 1972, 349 F.Supp. 278, is vacated and the cause is remanded for reconsideration consistent with the supervening decisions of *Alyeska Pipeline Service Co. v. The Wilderness Society,* 1975, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141, and *Edelman v. Jordan,* 1974, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662.

Vacated and remanded with direction.

GEWIN, Circuit Judge, with whom BROWN, Chief Judge, and WISDOM, THORNBERRY and GOLDBERG, Circuit Judges, join, dissenting:

The cryptic and hollow remand order of the court en banc, directing the district court to reconsider the matter of awarding attorneys' fees and expenses,[1]

---

* The remaining issues were resolved in *Newman v. State of Alabama,* 5 Cir., 1974, 503 F.2d 1320.

1. The award in issue in this case included both attorneys' fees and expenses. Later references in this opinion to attorneys' fees include expenses as well.

is unacceptable to me. Therefore, I respectfully dissent.[2]

After a full trial in the district court, an opinion in favor of plaintiffs was rendered on October 4, 1972. *Newman v. Alabama,* 349 F.Supp. 278 (M.D.Ala. 1972). Upon appeal, the case was orally argued before a panel of this court, and in a decision on the merits, we sustained the injunctive relief ordered by the district court. *Newman v. Alabama,* 503 F.2d 1320 (5th Cir. 1974). We reserved decision on the issue of attorneys' fees for consideration en banc.[3] That phase of the case was rebriefed by the parties, and amicus briefs were filed. The en banc court heard lengthy argument by eminent and experienced counsel; oral argument occurred subsequent to the decision in *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), although prior to the decision in *Alyeska*

*Pipeline Service Co. v. The Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). This court has been fully informed as to the facts and the law of the case. Other courts of appeals have decided the issue. Recently, in an opinion delivered subsequent to *Edelman* and *Alyeska,* the Second Circuit has dealt with the problem fully and forthrightly.[4] In my view, it is entirely inappropriate for this court to refuse to face the issue and reach a decision.[5]

This litigation involved a massive challenge to the constitutionality of medical facilities and treatment within the Alabama Penal System (APS). The district court found the medical procedures violative of the inmates' Eighth and Fourteenth Amendment rights and ordered extensive affirmative relief. That court also awarded $12,000 to the prisoners' court-appointed counsel and ordered that

2. I agree that a limited remand of this case is necessary for the reasons stated in this dissent. However, it is my opinion that this court should now confront the issue whether attorneys' fees should be awarded if the district court makes a finding of bad faith on the part of the state upon consideration of pertinent evidence relative to that issue.

3. All issues in the case *sub judice* were placed before the court en banc by order of the court filed September 9, 1973. Counsel were afforded an opportunity to argue the merits, but it was conceded by all that the most disturbing issue in the case was the assessment of attorneys' fees and expenses in view of the decision in *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), and the provisions of the Eleventh Amendment. At oral argument en banc counsel did not argue the merits but limited their argument to the question of attorneys' fees and expenses. After submission of the case to the court en banc, the court on the 16th day of October 1974 amended its order of September 9, 1974 to reserve to the full court only the question of the allowance of attorneys' fees and expenses. The appeal concerning the merits of the case was remanded to the original hearing panel composed of Judges Gewin, Thornberry and Simpson. *See Newman v. Alabama,* 503 F.2d 1320, 1321 n. 1 (5th Cir. 1974).

4. *Mathews v. Bitzer,* (2d Cir. 1975) [No. 74–2581, June 2, 1975]. *See, e. g., Souza v. Tavisono,* 512 F.2d 1137 (1st Cir. 1975); *Class v. Norton,* 505 F.2d 123 (2d Cir. 1974); *Taylor v. Perini,* 503 F.2d 899 (6th Cir. 1974),

vacated, 421 U.S. 982, 95 S.Ct. 1985, 44 L.Ed.2d 474 (1975); *Jordon v. Gilligan,* 500 F.2d 701 (6th Cir. 1974), cert. denied, 421 U.S. 991, 95 S.Ct. 1996, 44 L.Ed.2d 481 (1975); *Skehan v. Board of Trustees,* 501 F.2d 31 (3d Cir. 1974), vacated, 421 U.S. 983, 95 S.Ct. 1986, 44 L.Ed.2d 474 (1975).

5. It has long been the policy of this and other courts to address fully all issues involved, in the interest of judicial economy and pursuant to the supervisory power over district courts inherent in federal courts of appeals. As succinctly stated in the seminal case of *LaBuy v. Howes Leather Co.,* 352 U.S. 249, 77 S.Ct. 309, 1 L.Ed.2d 290, the exercise of supervisory power by courts of appeals is not only proper but necessary to judicial administration. Moreover, such supervisory power has been recognized by every court that has confronted the issue. *See, e. g., Burton v. United States,* 483 F.2d 1182 (9th Cir. 1973); *United States v. Thomas,* 146 U.S.App.D.C. 101, 449 F.2d 1177 (1971) (en banc); *In re Ellsberg,* 446 F.2d 954 (1st Cir. 1971); *United States v. Daniels,* 446 F.2d 967 (6th Cir. 1971); *Ralph v. Warden,* 438 F.2d 786 (4th Cir. 1970), cert. denied, 408 U.S. 942, 92 S.Ct. 2869, 33 L.Ed.2d 766 (1972); *United States v. Fioravanti,* 412 F.2d 407 (3d Cir.), cert. denied, 396 U.S. 837, 90 S.Ct. 97, 24 L.Ed.2d 88 (1969); *United States v. Brown,* 411 F.2d 930 (7th Cir. 1969), cert. denied, 396 U.S. 1017, 90 S.Ct. 578, 24 L.Ed.2d 508 (1970); *United States v. Dooling,* 406 F.2d 192 (2d Cir.), cert. denied, 396 U.S. 911, 89 S.Ct. 1744, 23 L.Ed.2d 224 (1969); *Sanders v. Russell,* 401 F.2d 241 (5th Cir. 1968).

he be reimbursed for the $2,483.42 in expenses he incurred in prosecuting this litigation; each sum was to be taxed as costs. Appellants argue on this appeal that the Eleventh Amendment bars the award of attorneys' fees and expenses because the same constitutes an award against the state.[6]

The issue before us is inexorably bound to the merits of the prisoners' constitutional claims. The Constitution does not require the state to operate prisons, though as a practical matter it must.[7] The Constitution does, however, demand that if a citizen is imprisoned, his or her imprisonment must not transgress the interdiction of the Eighth Amendment's cruel and unusual punishment clause, as applied to the states through the Fourteenth Amendment. Moreover, the due process clause places restrictions on the methods utilized by a state in managing a penal system. Citizens engaoled by the strong hand of the state do not lose all constitutional rights at the prison gate. No person can be denied life or liberty without due process of law. The right to be free from cruel and unusual punishment survives a crim-

inal judgment of conviction and subsequent imprisonment.

The constitutional derelictions present in this case would not have been illuminated without the diligent efforts of court-appointed counsel. The district court noted that after the complaint had been filed on behalf of all Alabama prisoners and the defendants categorically denied the plaintiffs' contentions, appointment of counsel to represent the inmates was necessary. 359 F.Supp. at 286. The plaintiffs' attorney played the central role in developing the evidence, and without him the district court would have been incapable of discovering and correcting egregious instances of neglect and malfeasance that violated the constitutional rights of large segments of the prison population.

The first question presented on appeal, and that which concerned the court at oral argument, is whether an award of attorneys' fees is barred by the Eleventh Amendment. It is well established, of course, that the Eleventh Amendment prohibits an award of damages that is in substance against the state. *Edelman*

---

**6.** In its opinion the district court took note of the fact that when suit was filed and in response to a show cause order of the court the defendants filed a formal answer categorically denying the contentions of the plaintiffs. The court then concluded that an attorney was necessary to a proper adjudication of the issues presented. In the order appointing counsel to represent the plaintiffs, the district court concluded that the defendants were put on notice "that a reasonable attorney's fee, to be determined by the court at the conclusion of the cause", was to be taxed as a part of the court costs in this proceeding. 349 F.Supp. 278, 286 (M.D.Ala.1972). There was no objection to this procedure.

We are advised by the appellees' final brief before the en banc court that the attorneys' fees and expenses in question have already been paid into the district court by the State of Alabama. Payment was made on November 3, 1972, by the Comptroller of the State of Alabama pursuant to a special appropriations bill of the state legislature. The fees and expenses have not yet been disbursed by the district court. In any event, the Eleventh Amendment issue must be resolved.

**7.** This reasoning echoes that enunciated in *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935, 951 (1974), where in response to the contention that due process mandates do not attach to disciplinary procedures affecting good time credit because the state is not required to grant such credit, the Supreme Court responded:

"Nebraska may have the authority to create, or not, a right to a shortened prison sentence through the accumulation of credits for good behavior, and it is true that the Due Process Clause does not require a hearing 'in every conceivable case of government impairment of private interests.' *Cafeteria Workers v. McElroy*, 367 U.S. 886, 894, 81 S.Ct. 1743, 1778, 6 L.Ed.2d 1230 (1961). But *the State having created the right to good time and itself recognizing that its deprivation is a sanction authorized for major misconduct, the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment 'liberty' to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated.*" (Emphasis added)

*v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Ford Motor Co. v. Department of the Treasury*, 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389 (1945); *Kennecott Copper Corp. v. State Tax Comm'r*, 327 U.S. 573, 66 S.Ct. 745, 90 L.Ed. 862 (1946). Since *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), however, it has been equally well settled that federal courts may compel state officials to bring their actions into conformity with constitutional mandates. Such equitable relief often imposes an inevitable and ancillary burden on the state treasury. *See, e. g., Graham v. Richardson*, 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971); *Rosado v. Wyman*, 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970); *Griffin v. School Board*, 377 U.S. 218, 84 S.Ct. 1226, 12 L.Ed.2d 256 (1964). That funds allocated for the operation of a prison system must ultimately bear the cost of official compliance with the Constitution does not therefore render the relief impermissible under the Eleventh Amendment. So long as the expenses are incidental to legitimate equitable relief, payable from funds earmarked for a specific function, rather than damages payable directly to successful plaintiffs, the principles of *Ex Parte Young* shield the award from constitutional attack.

The Supreme Court refined Eleventh Amendment analysis in *Edelman v. Jordan, supra.* That case held that while the principles of *Ex Parte Young* permit prospective injunctive remedies for welfare recipients unlawfully denied benefits, the Eleventh Amendment bars an order to make retroactive payments of past benefits. The opinion did not address the Eleventh Amendment's effect on an award of attorneys' fees, but it specifically recognized that the state must often assume costs that are ancillary and incidental to an order for injunctive relief:

> [T]he fiscal consequences to state treasuries in these cases were the necessary result of compliance with decrees which by their terms were pro-

spective in nature. State officials, in order to shape their official conduct to the mandate of the Court's decrees, would more likely have to spend money from the state treasury than if they had been left free to pursue their previous course of conduct. Such an ancillary effect on the state treasury is a permissible and often an inevitable consequence of the principle announced in *Ex Parte Young, supra.*

> 415 U.S. 668, 94 S.Ct. at 1358, 39 L.Ed.2d at 675.

Attorneys' fees, which represent a cost of achieving compliance with prospective decrees, vindicating recognized constitutional rights, fit comfortably within this category.

*Edelman* holds only that an order compelling state officers to pay state funds as compensation for past official misconduct runs afoul of the Eleventh Amendment. A federal court lacks jurisdiction to command such relief because it, in effect, constitutes an award of damages against the state. 415 U.S. at 668, 94 S.Ct. at 1358, 39 L.Ed.2d at 676. Attorneys' fees, on the other hand, stand in a completely different posture. Unlike wrongfully denied welfare payments, *Edelman v. Jordan, supra*, or improperly collected income taxes, *Ford Motor Co. v. Department of the Treasury, supra*, attorneys' fees are not the *raison d'etre* of the lawsuit; rather, they are the necessary concomitant of an appeal to a court of equity for vindication of constitutional rights. The court below did not order reparation to the plaintiff class for past injustices. Attorneys' fees do not constitute the relief prayed for and are therefore distinct from compensation that makes the plaintiff whole for past malfeasance. *See Edelman v. Jordan, supra; Rothstein v. Wyman*, 467 F.2d 226 (2d Cir. 1972), *cert. denied*, 411 U.S. 921, 93 S.Ct. 1552, 36 L.Ed.2d 315 (1973). Moreover, the amount of such an award is generally not large enough to seriously disrupt the state treasury. In essence, then, attorney's fees are merely an ancillary and incidental consequence of an ef-

fort to rectify a system grossly in need of reform.[8]

Here Alabama need make no remuneration for past derelictions. Virtually all lawsuits, even declaratory judgment actions, are based in part on past conduct. The jurisdictional indispensability of a ripe "case or controversy" demands some prior interaction between the parties. In the present case equitable relief *in futuro* was sought by those prisoners in need of adequate medical care. To argue that the state cannot be forced to disgorge any of its funds to ameliorate past transgressions misconstrues *Edelman* and eviscerates prior constitutional decisions. *See, e. g., Reynolds v. Sims,* 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964); *Brown v. Board of Education,* 349 U.S. 294, 75 S.Ct. 753, 99 L.Ed. 1083 (1955). In *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), the Court required the state to provide counsel in felony cases. Similarly, *Argersinger v. Hamlin,* 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972) demands that states furnish counsel in certain types of misdemeanor cases.[9] This court has extended the rationale of *Gideon* to require the state to provide counsel on appeal for indigents. *Horsley v. Simpson,* 400 F.2d 708 (5th Cir. 1968).

While the applicability of the Eleventh Amendment has not heretofore been explicitly considered, we have found no difficulty in awarding attorneys' fees in pre-*Edelman* suits to enjoin unconstitutional conduct. *See, e. g., NAACP v. Allen,* 493 F.2d 614 (5th Cir. 1974); *Morrow v. Crisler,* 491 F.2d 1053 (5th Cir. 1974) (en banc). Moreover, in *Sims v. Amos,* 340 F.Supp. 691 (M.D.Ala.) (three-judge court), *aff'd,* 409 U.S. 942, 93 S.Ct. 290, 34 L.Ed.2d 215 (1972), the Supreme Court affirmed just such an award over an Eleventh Amendment challenge. Following successful prosecution of a reapportionment suit, *Sims v. Amos,* 336 F.Supp. 924 (1972) (three-judge court), the district court taxed costs and attorneys' fees against Alabama state legislators, the Governor, the Attorney General, and the Secretary of State. On appeal to the Supreme Court, the defendants in their jurisdictional statement asserted that the award of attorneys' fees and expenses against "elected state officials sued in their official capacity . . . was tantamount to the award of a money judgment against the State of Alabama in direct violation of the doctrine of sovereign immunity." The Supreme Court unanimously affirmed without opinion the district court's judgment.

In the recent case of *Hicks v. Miranda,* 422 U.S. 332, 95 S.Ct. 2281, 45

---

**8.** *See generally* Note, 88 Harv. L.Rev.1875, 1881–1896 (1975).

**9.** The Court was fully aware of the fiscal consequences that its decisions would have upon state treasuries. Mr. Justice Powell, joined by Mr. Justice Rehnquist, concurring in the result in *Argersinger,* noted that successful implementation of the Court's decision "would require state and local governments to appropriate considerable funds . . . ." 407 U.S. at 61, n. 30, 92 S.Ct. at 2024, n. 30, 32 L.Ed.2d at 552, n. 30. The state of Kansas was cited as an example. In 1971, Kansas expended $570,-000 defending indigents in felony cases. *Id.* The magnitude of the burden on state resources had been described to the Court. As Mr. Justice Powell stated:

> The Solicitor General, who suggested on behalf of the United States the rule the Court today adopts, recognized that the consequences could be far reaching. *In addition to the expense of compensating counsel,* he noted that the mandatory requirement of de-

fense counsel will "require more pre-trial time of prosecutors, more courtroom time, and this will lead to bigger backlogs with present personnel. Court reporters will be needed as well as counsel, and they are one of our worst bottlenecks." 407 U.S. at 55, 92 S.Ct. at 2021, 33 L.Ed.2d at 549 (emphasis added).

The Justices expressed doubt "that the States possess the necessary resources to meet this sudden expansion of the right to counsel." *Id.*

In *Reynolds v. Sims,* 377 U.S. 533, 561, 84 S.Ct. 1362, 1381, 12 L.Ed.2d 506, 527 (1964), the Court recognized that its decision would require "the restructuring of the geographical distribution of seats" in the state legislature, but such a result was necessary in order to avoid unlawful discrimination by the state against its own citizens, which constituted an impermissible impairment of their constitutional right to vote. The inevitable result was the expenditure of substantial funds by the state—an ancillary if not a direct effect on the state treasury.

L.Ed.2d 223 (1975), the Supreme Court held that summary disposition of a case within the Court's obligatory appellate jurisdiction is a disposition on the merits, and "the lower courts are bound by summary decisions by this Court 'until such time as the Court informs [them] that [they] are not.' "[10] 95 S.Ct. at 2289, 45 L.Ed.2d at 236. Clearly, then, the summary affirmance of *Sims* is binding on this court and directly supports a conclusion that an award of attorneys' fees in the instant case will be proper if the defendants' actions are found to come within one of the exceptions noted in *Alyeska.*

As Mr. Justice Rehnquist observed in *Edelman,* the distinction between permissible and prohibited relief in Eleventh Amendment cases is seldom as obvious as the difference between noonday and midnight. The issue of attorneys' fees has already caused an apparent conflict among the circuit courts that have grappled with this perplexing problem. *Compare Jordon v. Gilligan,* 500 F.2d 701 (6th Cir. 1974), *cert. denied,* 421 U.S. 991, 95 S.Ct. 1996, 44 L.Ed.2d 481 (1975) *and Skehan v. Board of Trustees,* 501 F.2d 31 (3d Cir. 1974), *vacated,* 421 U.S. 983, 95 S.Ct. 1986, 44 L.Ed.2d 474 (1975) *with Souza v. Travisono,* 512 F.2d 1137 (1st Cir. 1975); *Class v. Norton,* 505 F.2d 123 (2d Cir. 1974); *Jordan v. Fusari,* 496 F.2d 646 (2d Cir. 1974); *Milburn v. Huecker,* 500 F.2d 1279 (6th Cir. 1974) *and Brandenburger v. Thompson,* 494 F.2d 885 (9th Cir. 1974). I specifically endorse the Second Circuit's reasoning in *Jordan v. Fusari, supra,* a decision that awarded fees to attorneys successfully prosecuting constitutional challenges to a state's unemployment compensation system. As that court stated:

> [I]t appears to us that the allowance awarded here as part of an order granting injunctive relief, has at most the "ancillary effect on the state treasury" which *Edelman v. Jordan, supra* . . . characterizes as "a permissible and often inevitable consequence of the principles announced in *Ex Parte Young* . . .."

496 F.2d at 651.

A holding that the Eleventh Amendment does not bar an award of attorneys' fees would comport with the fundamental rationale of this entire case. The state is not required to operate a prison system. But if the state incarcerates certain of its citizens, it assumes the burden under the Eighth and Fourteenth Amendments of providing decent and humane treatment for them. Having established a prison system, the state is obligated to appropriate funds for these purposes. Just as these moneys are available to provide food, clothing, shelter, and medical assistance, so should they be available to compensate court-appointed attorneys of prisoners seeking prospective relief in instances of state neglect or willful misconduct.[11] If the state can be required to purchase sterile gauze and safe x-ray machinery, it can be required to compensate the vehicle by which the facts of egregious neglect were placed before the court.

10. Writing for the majority in *Edelman,* Mr. Justice Rehnquist stated that three summary affirmances, over Eleventh Amendment objections, of district court judgments awarding retroactive payments were "not of the same precedential value as would be an opinion of this Court treating the question on the merits." 415 U.S. at 671, 94 S.Ct. at 1359, 39 L.Ed.2d at 677. As aptly noted by Judge Edwards, however, "[t]he fact that some justices of the Supreme Court may feel that a summary affirmance carries less weight *with them* than an argued case decided by full opinion and hence is easier *for them* to overrule, gives this court no right or power to overrule or disregard any decision of the United States Supreme Court." *Taylor v. Perini,* 503 F.2d 899, 907 (6th Cir.

1974) (dissenting opinion) (emphasis in original), *vacated,* 421 U.S. 982, 95 S.Ct. 1985, 44 L.Ed.2d 474 (1975).

11. My conclusions are not based on the theory that the state has waived its Eleventh Amendment immunity. While the Constitution does not require states to operate a prison system, it is in practice necessary that they do so. Consequently, all states operate such systems as a routine governmental (non-proprietary) function. Sovereign immunity is not waived in such circumstances. *Cf. Paden v. Terminal Ry. of Ala. State Docks Dep't.,* 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964); *Petty v. Tennessee-Missouri Bridge Comm'n,* 359 U.S. 275, 79 S.Ct. 785, 3 L.Ed.2d 804 (1959).

Having eliminated the Eleventh Amendment hurdle erected by the state, we must decide what effect the Supreme Court's recent decision in *Alyeska Pipeline Service Co. v. Wilderness Society, supra,* has on the award of attorneys' fees. In that case the Court, in accordance with the prevailing American Rule, held that attorneys' fees are generally not recoverable against the losing party unless authorized by statute.[12] Only three exceptions exist to that rule: (1) willful disobedience of a court order, (2) the common fund doctrine, and (3) bad faith, vexatious, wanton, or oppressive conduct on the part of the losing party. 95 S.Ct. at 1622, 44 L.Ed.2d at 154. Neither of the first two exceptions applies to the present case. There is no indication in the record that the Alabama Prison System or its officials willfully disobeyed an order of the court. Nor do I believe the common fund doctrine should be extended to cover these circumstances. That theory arose as a means of spreading the costs of litigation among an ascertainable class of beneficiaries who profited monetarily from the decision. *Trustees v. Greenough,* 105 U.S. 527, 26 L.Ed. 1157 (1882). Though the doctrine has since been expanded to cover nonpecuniary benefits resulting to the class, *Mills v. Electric Auto-Lite Co.,* 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970), awards are generally made from pre-existing funds in which all the beneficiaries have a common interest, as in a shareholder derivative suit compelling the corporation to obey federal securities laws. Alabama prisoners do not control or have a common interest in funds that might be used to pay their court-appointed attorney, even assuming the common fund doctrine could be expanded beyond the corporate or trust sphere.

The third exception, for bad faith conduct, might apply. Therefore, I would remand this case to the district court solely for a determination whether the state acted in bad faith or for oppressive reasons.

The district court named the following persons as parties defendant: the Attorney General of the State of Alabama, the Commissioner, the chairman and other members of the Alabama Board of Corrections, the hospital administrator and the hospital staff of the Medical and Diagnostic Center. 349 F.Supp. at 280. The findings of fact declared that the Board of Corrections' failure to provide adequate medical care constituted "a willful and intentional violation of the rights of prisoners guaranteed under the Eighth and Fourteenth Amendments." 349 F.Supp. at 286. In its final judgment, however, the court required all the defendants to contribute to the attorney's fee. The ultimate decree is therefore not supported by the factual determinations.

While equitable relief may be granted against state officers in appropriate circumstances, *Ex Parte Young, supra,* the record does not sustain an award against these individual defendants. Individual state officers, often serving for low compensation, should not be held personally liable for actual *state* neglect, inefficiency, inattention, and grossly apparent apathy. Indeed, some "state officers" are only technicians of one kind or another, with little or no authority to influence policy or to improve the treatment of the vast prison population. The record further indicates that those officials who might enjoy some degree of influence have frequently pleaded for assistance in elevating prison medical facilities to a tolerable level. As they have no power of appropriation, they can only plead for help and then stand and wait. It often happens that they wait in vain. Moreover, we are conscious of the fact that state officials, such as the Attorney General, the Director of Prison Systems, members of the Board of Corrections, and others change fairly frequently in the course of administering the prison system. The conditions revealed by the record in this case did not occur in one season. Rather, the evils catalogued by

12. The Court expressly left open the question whether the Eleventh Amendment might bar an award of attorneys' fees. 421 U.S. 269, 95 S.Ct. at 1627, 44 L.Ed.2d at 160, n. 44.

the trial court are obviously the result of failures that have occurred over the course of many years. It is unjust to hold those presently in authority monetarily liable for the transgressions of their predecessors. Of course, no relief can be granted against persons who are not before the court.

The district court judgment for costs, attorneys' fees and expenses against "the defendants" should not stand.[13] An award of attorneys' fees against such officers as "hospital staff" does not appear to be appropriate, especially in view of the fact that it is not clear from the record that individual members of the hospital staff were before the court.[14] The named defendants in this case may be less responsible for prison conditions than others not named. Historically and in recent decisions the law has long been settled that when a state is "the real party in interest" it is a party to the litigation. The cases so holding are numerous, but I need only cite *Edelman v. Jordan, supra.* If the state has acted "in bad faith, vexatiously, wantonly, or for oppressive reasons . . .," *Alyeska Pipeline Service Co. v. The Wilderness Society, supra,* 421 U.S. at 258, 95 S.Ct. at 1622, 44 L.Ed.2d at 154, then an award of attorneys' fees against the state, being a necessary concomitant of the vindication of constitutional rights, represents a permissible "ancillary effect on the state treasury. . . ." *Edelman v. Jordan, supra,* 415 U.S. at 668, 94 S.Ct. at 1358, 39 L.Ed.2d at 675. As cogently and succinctly stated in *Gomillion v. Lightfoot,* 346 U.S. 339, 347, 81 S.Ct. 125, 130, 5 L.Ed.2d 110, 117 (1960):

When a State exercises power wholly within the domain of state interest, it is *insulated* from federal judicial review. But such *insulation is not carried over* when state power is used as an instrument for *circumventing a federally protected right.* (Emphasis added)

In numerous cases, the Supreme Court has dealt with conduct on the part of a state that contravenes constitutional concepts. *E. g., Reynolds v. Sims,* 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964); *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); *Baker v. Carr,* 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962); *Gomillion v. Lightfoot,* 364 U.S. 339, 81 S.Ct. 125, 5 L.Ed.2d 110 (1960). Often the state's action, or inaction, has been egregious. In *Baker v. Carr, supra,* the Court noted the failure for over sixty years of the Tennessee legislature to abide by state law.[15] Again, in *Reynolds v. Sims, supra,* the Alabama legislature's half-century dereliction of its duty to reapportion itself violated both state and federal constitutional guarantees.[16] The Court found that the legislature's inaction had resulted in "an irrational anachronism"; "a minority stranglehold on the State Legislature" existed because of "the crazy-quilt . . . apportionment virtually conceded to be invalid." 377 U.S. at 570, 84 S.Ct. at 1386, 12 L.Ed.2d at 532. The Court left no doubt as to the force of its opinion, stating: "[W]e mean that the Equal Protection Clause requires that a State make an *honest and good faith effort* . . ." to equalize the voting rights of its citizens. 377 U.S. at

**13.** This is not to say that in an appropriate § 1983 action, state officials who acted in bad faith, willfully, maliciously or vexatiously could not be held individually liable.

**14.** *See* discussion *supra.*

**15.** The state's conduct was asserted to be arbitrary and capricious, exhibiting an irrational disregard for state constitutional standards and patently offensive to the Fourteenth Amendment, thereby impairing through state action the right to vote. Of course it is well known that the Court concluded that the allegations of the complaint presented "a justicia-

ble constitutional cause of action upon which appellants are entitled to a trial and a decision. The right asserted is within the reach of judicial protection . . .." 369 U.S. at 237, 82 S.Ct. at 720, 7 L.Ed.2d at 697.

**16.** Although the Supreme Court of Alabama had found that the state's legislature had failed to comply with the state constitution, that court had refused to interfere. Thus, the Supreme Court concluded that the complaining parties were without a remedy and that action on the part of the federal judiciary was necessary to vindicate federally guaranteed constitutional rights.

577, 84 S.Ct. at 1390, 12 L.Ed.2d at 536 (emphasis added). The district court in *Sims v. Amos, supra,* while basing its award of attorneys' fees on "broader considerations of equity," 340 F.Supp. at 694, specifically noted the availability of bad faith as an additional ground. With reference to the Alabama legislature in particular, the court stated:

> The history of the present litigation is replete with instances of the Legislature's neglect of, and even total disregard for, its constitutional obligation . . .. [T]he Legislature unyieldingly refused to perform the mandate imposed upon it by both the State and Federal Constitutions. It is indisputable that the Legislature's deliberate failure to act *precipitated and in fact necessitated* this litigation. Justice would not be served were that body to escape responsibility for attorneys' fees. *Id.* (emphasis added).

As the Supreme Court pointedly stated in *Gideon v. Wainwright, supra,* 372 U.S. at 351, 83 S.Ct. at 800, 9 L.Ed.2d at 809 (1963), the states and state courts are "charged with the front-line responsibility for the enforcement of constitutional rights." When they fail in that responsibility, federal intervention is required. Noting that it had been "admonished not to restrict the power of the States," the *Reynolds* Court responded, "Our answer is this: a denial of constitutionally protected rights demands judicial protection; our oath and our office require no less of us." 377 U.S. at 566, 84 S.Ct. at 1384, 12 L.Ed.2d at 530.

On remand the district court should determine whether the state exhibited bad faith in its actions leading to the lawsuit or in its conduct of the litigation. *Hall v. Cole,* 412 U.S. 1, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973). The record demonstrates a litany of deplorable conditions that prompted the serious conclusion of an Eighth Amendment violation. The district court should resolve whether the state has violated a clear legal duty in its operation of penal facilities. *NAACP v. Allen,* 340 F.Supp. 703 (M.D.Ala.1972), aff'd, 493 F.2d 614 (5th Cir. 1974). If the district court finds state bad faith, liability should be fastened upon funds already earmarked for the operation and maintenance of the prison system.[17]

Liability for attorneys' fees and expenses of investigation should be awarded sparingly and with great caution. We must eschew any procedures that smack of champerty and maintenance in litigation of this type. While counsel should be awarded a reasonable fee, the highest prevailing fee should not be granted. In the case *sub judice,* for example, counsel expended 400 hours of effort and received $12,000 compensation. Such an award is at the rate of $30.00 per hour. The district court additionally awarded actual out-of-pocket expenses of $2,483.42. If the evidence adduced before the district court sustains a finding of bad faith, the amount of the fee previously awarded is fair and reasonable. *Cf. Fairley v. Patterson,* 493 F.2d 598 (5th Cir. 1974); *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir. 1974).

The ultimate decision whether attorneys' fees should be granted is left to the district court upon remand. If an award is to be made, payment should emanate from funds specifically allocated for use by the prison system and should not be taxed against individual defendants. This result would not constitute reaching into the state treasury; it would only mean that if the state chooses to imprison its citizens, it must pay the cost of maintaining the prison according to fundamental and well-established concepts of constitutional law.

17. We do not suggest that such payment come from funds allocated for the operation of the prison if payment can be made from other appropriate sources. See note 6 *supra.*