Louise **BOND**, Individually and on behalf of her minor children, et al., **Plaintiffs-Appellees,**

v.

Wayne A. **STANTON**, Individually and in his capacity as Administrator of the Indiana State Department of Public Welfare, et al., **Defendants-Appellants.**

No. 75–1459.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 31, 1975.

Decided Jan. 7, 1976.

Certiorari Granted June 1, 1976.

See 96 S.Ct. 2224.

Theodore L. Sendak, Atty. Gen., Donald P. Bogard, Asst. Atty. Gen., Indianapolis, Ind., for defendants-appellants.

Ivan E. Bodensteiner, Kenneth A. Rathert, Valparaiso University School of Law Valparaiso, Ind., Seymour Moskowitz, Gary, Ind., for plaintiffs-appellees.

Before STEVENS, Circuit Justice,* TONE, Circuit Judge, and HOFFMAN, Senior District Judge.**

* Mr. Justice Stevens participated initially as Circuit Judge, and on and after December 19, 1975 as Circuit Justice.

TONE, Circuit Judge.

■ This appeal presents the question of whether the eleventh amendment bars the assessment of attorneys' fees against state officials sued in their official capacity under 42 U.S.C. § 1983. We hold that it does not, because we consider ourselves bound by the Supreme Court's summary affirmance in *Sims v. Amos,* 340 F.Supp. 691 (M.D.Ala.), *aff'd,* 409 U.S. 942, 93 S.Ct. 290, 34 L.Ed.2d 215 (1972).

Plaintiffs brought this class action to compel the defendant Indiana officials to comply with an amendment to Title XIX of the Social Security Act, 42 U.S.C. §§ 1396–1396g, which was added in 1967. That amendement, 42 U.S.C. § 1396d(a)(4)(B), required the states to adopt an early and periodic screening, diagnosis, and treatment (EPSDT) program for all Medicaid-eligible children, covering those under six years of age by February 7, 1972, and those under twenty one by July 1, 1973. When the defendant officials failed to meet either deadline, plaintiffs brought this action. The District Court found that defendants had failed to comply with the amendment and ordered them to do so by July 1, 1974, reserving the question of attorneys' fees. 372 F.Supp. 872 (N.D. Ind.1974). This court affirmed. 504 F.2d 1246 (7th Cir. 1974). Later, in an unpublished order, the District Court assessed attorneys' fees against defendants in their official capacities in the amount of $2,366. The award was based on the private attorney general theory, now defunct by reason of *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), and on the defendants' bad faith both in failing to comply with the requirements of federal law before the action was commenced and in the course of the litigation. This is an appeal from that order.

■ A federal court has inherent power to assess attorneys' fees against a los-

** Senior District Judge Julius J. Hoffman of the Northern District of Illinois is sitting by designation.

ing party who has acted in bad faith. See *Alyeska Pipeline Service Co. v. Wilderness Society, supra,* 421 U.S. at 259, 95 S.Ct. 1612; *F. D. Rich Co. v. Industrial Lumber Co.,* 417 U.S. 116, 129, 94 S.Ct. 2157, 40 L.Ed.2d 703 (1974). The bad faith which is the basis for the award may be in the conduct which necessitated the action or in conduct occurring during the course of the action. *Hall v. Cole,* 412 U.S. 1, 15, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973).

■ The District Court's finding of bad faith in this case is amply supported by the evidence. The defendant state officials, disregarding their clear legal duty, were, in the words of the District Court, "more than two years late in even attempting to implement a statewide EPSDT program." It was this conduct which necessitated the present injunctive suit. *Cf. Doe v. Poelker,* 515 F.2d 541, 548 (8th Cir. 1975); *Fairley v. Patterson,* 493 F.2d 598, 606 (5th Cir. 1974). In addition, defendants, after suit was filed, "continually asserted compliance with HEW requirements in the face of documentation to the contrary." Stringent as the standards for establishing bad faith may be, *Satoskar v. Indiana Real Estate Commission,* 517 F.2d 696, 698 (7th Cir. 1975), they were more than satisfied by the facts before us. The award of attorneys' fees was therefore justified unless barred by the Constitution.

■■ As noted by the Supreme Court in *Alyeska, supra,* 421 U.S. at 269, n. 44, 95 S.Ct. 1612, and by us in *Satoskar, supra,* 517 F.2d at 698 n.,[1] the circuits are divided on the question of whether the eleventh amendment prohibits assessment of attorneys' fees against a state or state officers acting in their official capacity. Courts have also differed about whether lower federal courts faced with that question are bound by the Supreme Court's summary affirmance of *Sims v. Amos, supra.*[2] In that case a three-judge court, after finding malapportionment in the Alabama legislature, 336 F.Supp. 924, awarded attorneys' fees and costs to the plaintiffs, 340 F.Supp. 691. It is not clear from the second opinion of the three-judge court

1. In addition to the cases cited in the footnotes in *Alyeska* and *Satoskar* referred to in the text, see *Gates v. Collier,* 522 F.2d 81 (5th Cir. 1975) and *Newman v. Alabama,* 522 F.2d 71 (5th Cir. 1975) (both cases remanding issue of attorneys' fees to the district court for reconsideration); *Mathews v. Bitzer,* 519 F.2d 559 (2d Cir. 1975), *cert. granted,* —— U.S. ——, 96 S.Ct. 561, 46 L.Ed.2d 404 (1975); *cf. Hoitt v. Vitek,* 361 F.Supp. 1238, 1255 (D.N.H.1973), *aff'd,* 495 F.2d 219 (1st Cir. 1974). For a comprehensive discussion of attorneys' fees and the eleventh amendment see Note, 88 *Harv.L. Rev.* 1875 (1975).

2. The Ninth Circuit relied on *Sims* in awarding attorneys' fees in *Brandenburger v. Thompson,* 494 F.2d 885, 888 (9th Cir. 1974). A majority of the Fifth Circuit, sitting in banc, evidently did not view *Sims* as controlling in *Newman v. Alabama, supra,* 522 F.2d 71, when they remanded for reconsideration in light of *Alyeska* and *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 693 (1974), but five members of that court, speaking through Judge Gewin, felt bound by *Sims.* See also the companion case of *Gates v. Collier, supra,* 522 F.2d 81, in which Judge Tuttle, writing for himself and the five dissenters in *Newman,* endorsed Judge Gewin's *Newman* dissent. In the Sixth Circuit, two panels have not followed *Sims. Jordon v. Gilligan,* 500 F.2d 701, 710 (6th Cir. 1974), *cert. denied,* 421 U.S. 991, 95 S.Ct. 1996, 44 L.Ed.2d 481 (1975); *Taylor v. Perini,* 503 F.2d 899 (6th Cir. 1974), vacated for further consideration in light of *Alyeska* (presumably as to the part of the opinion upholding an award against a defendant individually on a private attorney general theory), 421 U.S. 982, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). In an intervening decision, *Milburn v. Huecker,* 500 F.2d 1279 (6th Cir. 1974), another panel permitted an award of attorneys' fees in an opinion which denies retroactive welfare benefits on the ground of *Edelman's* interpretation of the eleventh amendment, but, in discussing attorneys' fees, makes no reference to *Edelman,* or the amendment although citing *Sims. Milburn* was cited in *Taylor* only for another point. 503 F.2d at 904. Judge Edwards dissented in *Taylor,* arguing, *inter alia,* that *Sims* was binding. 503 F.2d 906, 907–908. Finally, the Third Circuit, in *Skehan v. Board of Trustees,* 501 F.2d 31, 42 (3d Cir. 1974), vacated in light of *Alyeska* and *Wood v. Strickland,* 421 U.S. 983, 95 S.Ct. 1986, 44 L.Ed.2d 475 (1975), held that *Edelman* "appears to bar the award of attorneys fees from the state treasury," and in a footnote attributes the Supreme Court's failure to overrule its summary affirmance of *Sims* to inadvertence. See also *Sincock v. Obara,* 320 F.Supp. 1098 (D.Del.1970) (three-judge court).

in *Sims,* 340 F.Supp. 691, which dealt with attorneys' fees and costs, whether the defendant state officials asserted their constitutional immunity, although the court did say in a footnote that the state had no power to impart any immunity to is officers "from [an] injunction or from its consequences, including court costs incident thereto." 340 F.Supp. at 694 n. 8. The Supreme Court, however, will consider a claim of immunity under the eleventh amendment even though it was not raised in the trial court. *Edelman v. Jordan, supra,* 415 U.S. at 677–678, 94 S.Ct. 1347. And, in their jurisdictional statement filed in the Supreme Court, the *Sims* defendants specifically raised the attorneys' fees issue, 409 U.S. 942, 93 S.Ct. 290, 34 L.Ed.2d 215, and asserted that the award of · attorneys' fees against "elected state officials sued in their official capacity . . . was tantamount to the award of a monetary judgment against the State of Alabama in direct violation of the doctrine of sovereign immunity." See *Newman v. Alabama, supra,* 522 F.2d at 74 (Gewin, J., dissenting). A state's sovereign immunity was historically, see *Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890), the basis for the line of cases culminating in the present doctrine that the eleventh amendment governs suits against a state by its own citizens, even though the literal words of the amendment refer only to suits "by Citizens of another State, or by Citizens or Subjects of any Foreign State." See *Edelman v. Jordan, supra,* 415 U.S. at 663, 94 S.Ct. 1347. See also *Employees of the Dept. of Public Health & Welfare v. Department of Public Health & Welfare,* 411 U.S. 279, 280, 284, 93 S.Ct. 1614, 36 L.Ed.2d 251 (1973); compare Mr. Justice Marshall's concurrence, 411 U.S. at 290–294, 93 S.Ct. at 1620–1622, and Mr. Justice Brennan's dissenting remarks at 411 U.S. at 309–315, 93 S.Ct. at 1630–1633, and in *Yeomans v. Kentucky,* —— U.S. ——, ——, 96 S.Ct. 404,

46 L.Ed.2d 309 (1975). Accordingly, it would appear that the *Sims* jurisdictional statement sufficiently raised the question of whether the eleventh amendment barred the attorneys' fees award. There can be no doubt, moreover, that the Court intended to rule on the award of attorneys' fees. The initial publication of its order in the unbound volume of official reports referred only to 336 F.Supp. 924, the decision on the merits, as affirmed. As finally published, however, the order of affirmance included 340 F.Supp. 691, the decision which awarded attorneys' fees and costs. 409 U.S. 942, 93 S.Ct. 290, 34 L.Ed.2d 215. We believe that the Supreme Court's summary affirmance of the district court's award of attorneys' fees against state officials in their official capacity was a decision on the merits of the immunity issue presented to us in this case.

In *Hicks v. Miranda,* 422 U.S. 332, 344–345, 95 S.Ct. 2281, 2289, 45 L.Ed.2d 223 (1975), the Supreme Court set at rest any doubts about whether its summary disposition of a case on the merits is binding on the lower federal courts:

> "[T]he lower courts are bound by summary decisions by this Court 'until such time as the Court informs [them] that [they] are not.' "

We do not find in *Edelman v. Jordan* evidence of an intention to overrule *Sims* or of a doctrinal development indicating that *Sims* would be decided differently today. *Cf. Hicks v. Miranda, supra,* 422 U.S. at 344, 95 S.Ct. 2281.[3] Mr. Justice Rehnquist observed in *Edelman* that the difference between prohibited and permitted relief "will not in many instances be that between day and night," 415 U.S. at 667, 94 S.Ct. at 1357. The prescience of that observation is illustrated by the conflicting views of the circuits and of judges within the circuits on the question before us. Finally, the citation of *Sims* without comment in the footnote in *Alyeska* which collects the conflicting

---

**3.** Compare the discussion in the Sixth Circuit's *Jordon v. Gilligan, supra,* 500 F.2d at 707–708, with *Doe v. Hodgson,* 500 F.2d 1206, 1207– 1208 (2d Cir. 1974), and Judge Edwards dissent in *Taylor v. Perini, supra,* 503 F.2d at 907.

cases on the application of the eleventh amendment to attorneys' fees, 421 U.S. at 269 n. 44, 95 S.Ct. 1612, does not, in our view, show an intention to repudiate the *Sims* holding. A signal to the lower courts would take, we think, a clearer form than that.

Affirmed.